GEORGE WILLIAMS v. THE STATE.

No. 1506. Decided January 10, 1912.

**Aggravated Assault—Officer—Arrest—Charge of Court—Statutes Construed.**

Where, upon trial of aggravated assault upon an officer in the discharge of his duty, the evidence showed that the latter had no warrant of arrest, and that if an offense was committed it was not in his presence, and that the officer had no legal right to arrest the defendant; and the court charged the jury that the arrest was authorized although the offense was not committed in the presence of the officer, there was reversible error. Article 259, Revised Code Criminal Procedure.

Appeal from the Criminal District Court of Harris. Tried below before the Hon. C. W. Robinson.

Appeal from a conviction of aggravated assault; penalty, a fine of $100 and twelve months confinement in the county jail.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—The indictment charges appellant with having committed an aggravated assault and battery upon one W. A. Worke, who was then and there a policeman of the city of Houston, Harris County, and who was then and there in the lawful discharge of the duties of his office, and the said George Williams then and there knowing, being informed and it having been declared to him that the said W. A. Worke was then and there

such officer discharging his official duties. He was convicted and given twelve months in the county jail and a fine of one hundred dollars.

Worke, the assaulted party, says that he was a policeman; that he and Burke, another policeman, were walking up San Felipe Street, and met a woman and two negro men. The negro woman was crying, and said she wanted two men arrested for abusing her. While he was talking to her and trying to get at what they had done, one of the men turned around and started off; Burke went after him. When Burke was about ten or fifteen feet away defendant started off. Witness called him back and told him to wait a minute as he wanted to see what was the matter. That he wanted to investigate the matter before he took any action or arrested the defendant. Defendant came back, and in a minute started towards a little alley. "I called him back again; he came back and while we were standing there he struck me in the head with something hard; he hit me twice, once on top of the head and once between the eyes; he made a gash between my eyes." Witness pointed out the scar. It bled freely. Appellant knocked him up against a fence and ran away, when he, witness, struck him with his club. Several pistol shots were fired as appellant was running away. He ran into a fence and they caught him. They did not have any warrant for his arrest, nor did the witness see him commit any offense. The woman told him that appellant and another man had abused and mistreated her.

Burke testified also that Worke told the parties to stop, the defendant being one of them. The other negro started away and he, Burke, started after him; when he had gotten about ten or fifteen feet away he heard a disturbance, and looked back and saw the defendant strike Officer Worke and run. Another policeman, Ward, was nearby on his horse and ran into defendant and cut him off, but defendant turned and jumped a fence and ran about two blocks, but was finally caught after he had attempted to jump a second fence and got hung up on it. They then arrested and handcuffed him. Ward testified that he was sergeant of the Houston police force and was near the corner of San Felipe and Arthur Streets when the trouble occurred between defendant and Officer Worke. He heard Officer Burke tell Worke to stay there with the defendant until he found the other man. Burke started off and went up the street some fifteen or twenty feet. This witness did not see the first lick between defendant and Worke, but he did see defendant have Worke up against the fence, and then defendant broke away and ran. This witness chased defendant on his horse and ran his horse's shoulder against him to head him off. Defendant jumped one or two fences, and Burke followed and finally caught him. When this witness reached Officer Burke after the arrest, Worke appeared upon the scene and was bleeding badly about the face and head. Burke and defendant were scuffling, and Worke went up and hit the

defendant with his gun, and also hit him with his nippers. They arrested appellant and sent him to jail. This witness did not see who struck the first lick; that the first he heard was the scuffling, and when he looked around the defendant had Officer Worke up against the fence; that he saw Worke hit the defendant once with his gun, then they handcuffed defendant and sent him to jail.

Will Ridley testified for the defendant that he was present at the time of the difficulty; that he did not hear the defendant curse or abuse the woman, but heard the defendant tell her that she was drinking and to go on home. He was standing with the defendant when the two officers came up, and the defendant started to walk off when one of the officers said to the other officer, "You hold him until I go and look for the other negro." At that juncture this witness walked away and did not see anything else. When he heard the shots he ran. He says this was all he knew about it. The defendant testified that he had ·walked through a store and beer saloon at the corner of San Felipe and Arthur Streets, and saw his cousin, the negro woman, drinking with a man and he told her to go on home and cut out her drinking, and she said: "If you don't let me alone I will have you arrested." "I says, 'Well, I have not done anything, and if you want to have me arrested go ahead,' and I walked out with Will Ridley and was standing on the sidewalk when my cousin came up with two police officers and said 'There is one of them.' I then started to. walk off and one of the officers said to the other officer, 'You hold him until I look for the other man,' and I then told the officer that was holding me that I had done nothing and that that woman was my cousin, and I jerked away from him and ran. The officer struck me first, and when I ran a short distance I heard a couple of pistol shots, and I kept on running, and tried to jump over the fence, and I got hung on the fence, and one of the officers caught me and held me until Mr. Worke came, and Mr. Worke commenced to beat me over the head with a six-shooter a half dozen times or more. (The defendant shows his head to the jury showing six or more scars on his head.) These are the scars from the hits that Officer Worke hit me over the head with his pistol, and after I was handcuffed Officer Worke kept on hitting me over the head and I begged him not to hit me any more and not to kill me, as I had not done anything. I had not done anything and the officers never told me that they had a warrant for me. Officer Worke hit me first and grabbed me by the arm after my cousin told him that I had abused her. It was then I started to jerk away was when he hit me first. I had done nothing for him to arrest me and that is why I tried to jerk away from him." This is the substance of the case on the facts.

There are several questions suggested for revision, among other things, exception was reserved to the court's charge as follows: "I further instruct you that an officer can not arrest a citizen without

a warrant unless the offense was committed in his presence or within his view, unless the offense be a felony or an offense against the public peace." Article 259, Code of Criminal Procedure (Revised Criminal Statutes), reads as follows: "A peace officer or any other person may without warrant arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony, or is an offense against the public peace." It will be noticed the court charged the jury that the officer could not arrest without a warrant, unless the offense was committed in his presence or within his view, unless the offense be a felony or an offense against the public peace. In other words, under this charge of the court the officer was authorized to arrest without warrant if the offense was a felony or against the public peace, even when not committed within his view. The statute authorizes the arrest without a warrant by an officer or anyone else if the offense committed in his view, is a felony or an offense against the public peace. In other words, the court authorized the arrest of the defendant and justified that arrest by the charge given, although the offense was not committed in the presence of the officer. It is shown positively that it was not committed in his presence, even if a felony had been committed. Worke was holding appellant under arrest upon a statement made to him by a woman that defendant had mistreated her, and, as he states, for the purpose of examining into it. This he was not authorized to do, and the officer was not in the discharge of his duties under this statute. He had no legal right to arrest the defendant. Defendant had a right to relieve himself of the restraint. Inasmuch as the offense was an aggravation being committed upon an officer in the discharge of his duties, the evidence does not sustain it. The charge in which the court gave the legal criterion was palpably wrong, and submits the law exactly the reverse of what the statute makes it. For authorities see Lacy v. State, 7 Texas Crim. App., 403; Russell v. State, 37 Texas Crim. Rep., 314.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*