## UNITED STATES FIDELITY & GUARANTY CO. v. HENDERSON et al. (No. 3339.)*

Court of Civil Appeals of Texas. Texarkana. Feb. 18, 1927.

Rehearing Denied Feb. 24, 1927.

1. Rewards ⬅➡3—Bank directors held "officers" within meaning of offer of reward to bank officers capturing any one undertaking to rob bank.

Bank directors *held* "officers," within meaning of offer of reward to any officer or employé of the bank who captured one or more persons undertaking to rob the bank while insured with defendant company.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Officer.]

2. Rewards ⬅➡8—Capturing bank robber after robbery was completed act held not capture of "person undertaking to rob" bank within terms of reward offer.

Bank directors and cashier who captured robber by pursuing him after the robbery had been effected, *held* not entitled to reward under offer to any one capturing "person or persons undertaking to rob" bank.

3. Rewards ⬅➡15(3)—Court may infer that reward offer was inducement to persons capturing robber, notwithstanding their testimony that they would have made capture regardless of reward.

Notwithstanding that plaintiffs claiming reward for capture of robber testified that they did not have the offer in mind and would have captured him had there been no reward, *held* that court might infer that the offer was an inducement to them in effecting the capture.

4. Arrest ⬅➡64—Robbery committed inside bank held not within "presence or view" of persons 300 feet away, entitling them to arrest robber without warrant (Code Cr. Proc. 1925, art. 212).

Where robbery was committed inside bank, and could not be seen or heard by persons 300 feet away, *held* not within "presence" or view of such persons within Code Cr. Proc. 1925, art. 212, entitling them to arrest robber without warrant.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Presence.]

5. Rewards ⬅➡8—Illegality of arresting bank robber without warrant held to forbid recovery of reward for capture.

Where reward was offered for capture of one robbing bank, illegality of taking robber into their custody without warrant *held* to forbid plaintiffs' recovery of reward.

Appeal from District Court, Upshur County; J. R. Warren, Judge.

Suit by W. C. Henderson and others against the United States Fidelity & Guaranty Company. Judgment for plaintiffs, and defendant appeals. Reversed and rendered.

June 7, 1926, the Security State Bank of Ore City was robbed of $2,367.10 by a man named Blasingame. At that time the bank was insured by appellant against loss by robbery, and appellant was offering a reward of $1,000 to any officer or employee of the bank who captured, "dead or alive (quoting), one or more persons undertaking to rob" the bank while it was so insured. Claiming that they captured Blasingame and were entitled to the reward, appellees W. C. Henderson and G. W. De Berry, who were directors of the bank, and appellee S. M. Berry, who was its cashier, brought this suit against appellant, and recovered a judgment against it for the amount of the reward offered.

At the trial, which was before the court without a jury, appellant insisted, and it insists here, that it was not liable as claimed against it, because it appeared from the testimony, it says, (1) that appellees were not officers or employés of the bank within the meaning of the offer; (2) that Blasingame was not captured while he was "undertaking" to rob the bank, but after the robbery thereof had been fully accomplished; (3) that appellees were not induced by reliance upon the reward to undertake to capture Blasingame; and (4) that the capture of Blasingame by appellees was unlawful.

According to testimony of Miss Mabel Williamson, assistant cashier of the bank, the robbery occurred between 2 and 3 o'clock in the afternoon. Miss Williamson and her aunt, Mrs. C. E. Williamson, were the only persons in the bank when Blasingame appeared at a teller's window therein and said he wanted a check cashed. Miss Williamson directed him to the cashier's window, where he at once confronted her with a pistol in his hand and demanded that she turn the bank's money over to him. When she gave him the $2,367.10 he ran to an automobile he had left standing (with the engine running) in front of the bank and drove away in it. A man named Blevens, who was near the bank when Blasingame entered it, discovered it was being robbed and gave an alarm which attracted the attention of appellees. According to testimony of the latter, they were then sitting together on a bench

---

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted April 20, 1927

in front of a drug store about 300 feet from the bank building, looking at a land map. Appellee·Berry at once, when the alarm was given, ran to the bank, and appellees Henderson and De Berry ran to automobiles in which they drove after Blasingame. As Henderson passed the bank, Berry got into the automobile he (Henderson) was driving, and they followed Blasingame about 8 miles, when he (Blasingame) left the car in which he was riding and took to the woods, and appellees for a while 'ost sight of him. Berry then separated from Henderson and went to town in another automobile to telephone for dogs to use in trailing Blasingame. Henderson and De Berry continued their pursuit of Blasingame, and captured him a short distance from the place where he abandoned the automobile he was driving. Neither the pistol Blasingame had at the bank nor the money he took therefrom was found on him when he was captured, but the money was found several days later hidden·in the woods where he was captured.

Seay, Seay, Malone & Lipscomb, of Dallas, for appellant.

Briggs & Davis, of Gilmer, for appellees.

WILLSON, C. J. (after stating the facts as above). [1] It was not disputed that appellees Henderson and De Berry, who captured Blasingame, were directors of the bank. Nevertheless appellant insists they were neither "officers" nor "employés" thereof, and were not entitled to claim the reward because the offer was only to such officers and employés. No doubt it is true that directors of a' bank are not "employés" thereof, and in a sense (7 C. J. 545), are not "officers" thereof; but, in another and more general sense, we think they are such officers (In re Peninsula Cut Stone Co., 9 Del. Ch. 348, 82 A. 689; 7 C. J. 523; 3 R. C. L. 438), and that in this case Henderson and De Berry should be held to have been such officers within the contemplation of appellant when it offered the reward; for evidently its purpose in making the offer was to induce persons actively connected with the operation of the bank (and the directors were, to some extent at least) to resist attempts made to rob it, and in that way defeat or discourage such attempts and avoid liability it would be under in the event such an attempt was successful.

[2] Another contention urged ·by appellant is that appellees were not entitled to claim the reward because it was offered for the capture of "a person *undertaking* to rob the bank" and not for the capture of a person who *had* robbed it. It is argued that the word "undertaking" in the offer was used in the sense ·of "attempting," and that Blasingame was not attempting, but had completed, the robbery at the time he was captured.

On the facts of the case we think the contention should be sustained; · for, construing the offer as one for the capture of a person after he succeeded in robbing the bank and when he was miles away from the scene of the robbery, we see no good reason why it should not have been made to the general public instead of to the officers and employés of the bank alone. Certainly appellant should not be held to have offered a reward, the effect of which might be to induce officers and employés of the bank to abandon it and chase one an unlimited distance who had succeeded in robbing it.

The other contentions presented in appellant's brief, are (1) that it appeared that appellees did not have the offer of a reward in mind when they captured Blasingame, and hence were not induced by the offer to capture him; and (2) that it appeared the act of appellees in capturing Blasingame was illegal, because they were not present when the robbery was committed and were without a warrant authorizing them to arrest him at the time they captured him.

[3] The one first mentioned of the two contentions is overruled. It appeared that appellees knew appellant was offering the reward, and we think the trial court had a right to infer the offer was an inducement to them to act as they did, 'notwithstanding they testified they did not have the offer in mind all the time they were pursuing Blasingame, and would have pursued and captured him as they did had there been no offer of a reward for capturing him.

[4] As to the other one of the two contentions, we think it must be said that appellees had a right to capture Blasingame as they did only in the event the robbery of the bank by him was committed in their presence or within their view. Article 212, C. C. P. of 1925. It appeared without dispute in the testimony that the robbery was committed inside the bank building, that at the time it was committed appellees were sitting on a bench in front of a drug store situated on the same street and same side of the street as the bank building and about 300 feet from it, and that appellees did not see and could not see what occurred in the bank while Blasingame was in it. The testimony being as stated, can it be said that the robbery occurred in either the "presence" or "view" of appellees? We· think not. Construing the statute (now article 212, C. C. P. of 1925, referred to above) authorizing any person to arrest one who commits an offense classed as a felony in ·his presence or within his view, the Court of Criminal Appeals held it meant in such person's *actual* presence or within his *actual* view. Russell v. State, 37 Tex. Cr. R. 314, 39 S. W. 674. The same ruling, in effect, was made in· Brown v. Wallis (Tex. Civ. App.) 101 S. W. 1068, 1070, when the court said:

"It is not sufficient [quoting] that the officer is within seeing or hearing distance of the criminal act and thereby obtains knowledge of the fact, but he must also be able to 'detect it by sight or hearing as the act of the accused.'"

And so in State v. Pluth, 157 Minn. 145, 195 N. W. 789, the Supreme Court of Minnesota said (quoting):

"Where the officer could not observe nor become cognizant of the act constituting the offense by the use of his senses, it could not be committed in his presence so as to authorize an arrest without a warrant."

And see Williams v. State, 64 Tex. Cr. R. 491, 142 S. W. 899; Lacy v. State, 7 Tex. Civ. App. 403; Gilbert v. State, 78 Tex. Cr. R. 441, 181 S. W. 200; People v. Esposito, 118 Misc. Rep. 867, 194 N. Y. S. 326; Keith v. State (Okl. Cr. App.) 235 P. 631; 23 Cyc. 41; 31 C. J. 361.

[5] If, as we think appeared to be the case, appellees were not authorized by law to arrest Blasingame, then their taking him into their custody. as they did was an unlawful act (5 C. J. 395 et seq.), and the fact that the act was unlawful would forbid a recovery by them of a reward for doing it. Morris v. Kasling, 79 Tex. 141, 15 S. W. 226, 11 L. R. A. 398.

That being true, this court can pursue no other course than to reverse the judgment. And, doing that, it becomes its duty, on the record before it to here render the judgment the court below should have rendered, to wit, a judgment that appellees take nothing by their suit and in favor of appellant for costs.