## HENDERSON et al. v. UNITED STATES FIDELITY & GUARANTY CO.
### (No. 812–4838.)

Commission of Appeals of Texas, Section B. Oct. 12, 1927.

I. Rewards &#9758;3—Bank cashier and directors were bank "officers" within insurer's offer to reward officer capturing persons undertaking to rob bank.

Cashier and directors of bank were "officers" thereof within offer to pay reward to any officer of bank capturing persons undertaking to rob or burglarize bank while insured against burglarly or robbery by offeror.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Officer.]

2. Rewards &#9758;½—"Reward" is recompense or premium for special services, offered by one authorized to do so to particular person or class, or any person complying with terms.

A "reward" is a recompense or premium, offered by one having authority to make the offer, in return for special services to be performed, either to particular person or class, or to any and all persons complying with terms thereof (citing Words and Phrases, Second Series, "Reward").

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Reward.]

3. Rewards &#9758;3—Offer of reward and acceptance by performing services involved constitutes contract, construed like other contracts.

Offer of reward and acceptance thereof by performance of services involved constitutes a contract, no different from other contracts in respect to rules for construction of written instruments evidencing contract.

4. Rewards &#9758;3—Letter of contract to pay reward should not be regarded to exclusion of spirit.

In construing contract arising from offered of reward and acceptance thereof by performance of services involved, regard should not be had to the mere letter to the exclusion of the spirit.

5. Rewards &#9758;3—Intention of parties to contract to pay reward must be ascertained therefrom and given effect.

A fundamental rule, in construing contracts to pay rewards, is to ascertain therefrom, and give effect to, intention of parties.

6. Rewards &#9758;8—Liability of insurer offering to reward bank officers capturing persons "undertaking to rob or burglarize" bank held not limited to payment for capturing offender before getting possession of money.

Offer to pay reward to any officer or employee of bank capturing persons "undertaking to rob or burglarize" bank while insured against burglary or robbery by offeror *held* intended as inducement to prevent loss to bank under such circumstances as would compel insurer to compensate it not to limit liability to pay amount for capturing offender while undertaking to get manual possession of money, but before he succeeded.

7. Rewards &#9758;8—Bank officers, immediately pursuing and capturing robber, held entitled to reward offered for capturing persons "undertaking to rob bank."

Bank cashier and directors, pursuing and capturing bank robber immediately after robbery, before he succeeded in creating loss to bank, for which insurer would have been liable, *held* entitled to reward offered by insurer to any officer of bank capturing persons "undertak-

---

ing to rob or burglarize bank" while insured against such contingencies.

**8. Rewards ⟜8—Persons illegally arresting robber cannot recover reward offered for his capture.**

Reward offered for capture of persons undertaking to rob or burglarize bank while insured by offeror cannot be recovered, if arrest of robber by plaintiffs was illegal.

**9. Arrest ⟜64—Bank officers' arrest of robber without warrant after immediate pursuit held legal though robbery was not committed in their presence or view (Code Cr. Proc. 1925, arts. 212, 325).**

Under Code Cr. Proc. 1925, art. 325, arrest of bank robber by bank cashier and directors without warrant after immediate pursuit was legal, so as to authorize recovery of reward offerer by insurer, though offense was not committed in their presence or view, as required by article 212 to authorize arrest without warrant.

**10. Arrest ⟜64—Owner or lawful custodian of property may arrest thief without warrant, if done openly and without delay, being officer de facto, will all privileges of officer de jure, for time being (Code Cr. Proc. 1925, art. 325).**

Under Code Cr. Proc. 1925, art. 325, owner or lawful custodian of stolen property has right to pursue and arrest thief without warrant and take him to magistrate or peace officer, if done openly and without delay, being officer de facto, invested with all privileges and burdened with all penalties of officer de jure, for time being.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Action by W. C. Henderson and others against the United States Fidelity & Guaranty Company. A judgment for plaintiffs was reversed, and judgment rendered for defendant by the Court of Civil Appeals (293 S. W. 339), and plaintiffs bring error. Reversed, and judgment of the district court affirmed.

Briggs & Davis, of Gilmer, for plaintiffs in error.

Seay, Seay, Malone & Lipscomb, of Dallas, for defendant in error.

SHORT, J. The opinion of the Court of Civil Appeals in this case is to be found in 293 S. W. 339. On June 7, 1926, the Security State Bank of Ore City, under that name or another which it succeeded, was, and for three years had been, paying premiums on a policy of insurance executed and delivered by the defendant in error, by the terms of which it was insured against loss by robbery and burglary. Sometime previous to the date above mentioned, the defendant in error had caused to be posted within the bank building a placard bearing the following words and figures:

"$1,000.00                           $1,000.00

"We Will Bond and Insure You.

"United States Fidelity & Guaranty Company.

"Until further notice the undersigned will pay one thousand dollars reward to any officer or employee of this bank who captures, dead or alive, one or more persons undertaking to rob or burglarize this bank, while this bank is insured against burglary or robbery by the United States Fidelity & Guaranty Company, Baltimore, Maryland. R. Howard Bland, President."

Between 2 and 3 o'clock on the evening of June 7, 1926, Harry Blasingame drove up in front of the aforesaid bank building in a car, and, leaving the engine running, entered the bank and compelled a young woman, the assistant cashier, to deliver to him money amounting to the sum of $2,367.10. Blasingame then left the building, entered his car, and rapidly drove away. About the time he was leaving an alarm was given by some person on the outside, as well as by the assistant cashier and her aunt, who happened to be present at the time, and this alarm reached the ears of the plaintiffs in error, one of whom was the cashier and two of whom were directors of the bank. These people immediately entered cars and followed Blasingame for a distance of about eight miles, when the latter left his car and entered the adjoining woods. It was then agreed among the parties that the two directors should attempt to head off Blasingame by going another road while the cashier was to proceed in another direction. The directors of the bank discovered Blasingame as he was crossing the road they were traveling, arrested him, and started back to town with him, when they met the deputy sheriff, to whom they delivered him; the entire party returning to town within 40 minutes after the money had been taken. The cashier, in the meantime, had returned to town and was engaged in trying to secure the services of some dogs by telephonic communication when the party arrived. When Blasingame was arrested only two pennies were found on his person, the remainder of the money having been secreted in the woods, where it was afterwards found and returned to the bank. The plaintiffs in error having demanded of the defendant in error payment of the reward offered, and this demand having been refused, suit was instituted therefor, the trial thereof before the court without the intervention of the jury, resulting in a judgment for the plaintiffs in error, the amount being equally divided between the three. Upon appeal by the defendant in error to the Court of Civil Appeals at Texarkana, the judgment of the district court was reversed and judgment rendered that the plaintiffs in error take nothing. The case has reached this section of the commission in the usual

way through the granting of the application for a writ of error by the Supreme Court.

The defendant in error, in its answer, alleged it was not liable to the plaintiffs in error because, as alleged by it, it appears from the testimony that plaintiffs in error were not officers or employees of the bank within meaning of the offer; Blasingame was not captured while "undertaking" to rob the bank, but after the robbery thereof had been fully accomplished; that appellees were not induced by relying upon the reward to undertake to capture Blasingame; and that the capture of Blasingame was unlawful.

[1] The testimony shows without any substantial conflict that neither the cashier nor the directors were present when the assistant cashier delivered the money to Blasingame, being in front of the drug store about 300 feet from the bank building looking at a land map. But when the alarm was given all three proceeded to enter automobiles and to follow Blasingame with a view of capturing him and recovering the money which he had taken from the bank. They did capture Blasingame, but, while the money was afterwards found and returned, they did not find any money on his person except two pennies, and these pennies were the only money recovered. The record does not disclose affirmatively that the pennies were part of the money taken, but, in view of the testimony on the subject, it may be assumed that they were. The Court of Civil Appeals correctly held, in our opinion, that the plaintiffs in error were officers of the bank within the meaning of the offer, and that they did have the offer of reward in mind when they captured Blasingame, but, in our opinion, erroneously further held that Blasingame was not captured while he was "undertaking" to rob the bank, but after the robbery thereof had been fully accomplished, and, further, that the capture of Blasingame was unlawful.

[2-4] A "reward" is a recompense or premium offered by one having the authority to make the offer in return for special services to be performed, either to a particular person or class, or to any and all persons complying with the terms. Zwolanek v. Baker Mfg. Co., 150 Wis. 517, 137 N. W. 769, 44 L. R. A. (N. S.) 1214, Ann. Cas. 1914A, 793; 4 Words and Phrases, Second Series, p. 384. The offer of the "reward" and the acceptance of the offer by the performance of the services involved in the offer constitutes a contract which is not different from other contracts in respect to the rules of construction of written instruments evidencing a contract. In such cases, regard should not be had to the mere letter to the exclusion of the spirit. Haskell v. Davidson, 91 Me. 488, 40 A. 330, 42 L. R. A. 155, 64 Am. St. Rep. 254.

[5, 6] A fundamental rule in construing such contracts is to ascertain therefrom and to give effect to the intention of the parties thereto. According to this rule of construction, and in view of the object sought by the defendant in error in making the offer, it was its purpose, by furnishing this inducement to the officers and employees of the bank, to materially prevent a loss to the bank under such circumstances as, according to the terms of the policy, would compel the defendant in error to compensate the bank for any loss occurring under the conditions imposed by the terms of the insurance policy. The defendant in error has asserted here that the word "undertaking," as used in the offer, is synonymous in meaning with the word "attempting," and that the word "undertake" means the same as the word "attempt." It quotes from an opinion of the Supreme Court of the United States in the case of United States v. John B. Quincy, 6 Pet. 445, 8 L. Ed. 458, this language:

"To attempt to do an act does not, either in law or in common parlance, imply a completion of the act, or any definite progress towards it."

It also quotes article 1402 of the Penal Code 1925, defining the offense of attempting to commit burglary, which is in this language:

"An 'attempt' is an endeavor to accomplish the crime of burglary carried beyond mere preparation, but failing short of the ultimate design in any part of it."

It refers in its argument in support of its contention to article 1190 of the Penal Code 1925, which makes the attempt to rape a separate offense from that of rape. It likewise quotes article 1193, which makes an attempt to produce abortion a separate offense from that of producing an abortion, as well as article 1316, which makes an attempt to commit arson a separate offense from that of arson, and also article 1439, which makes an attempt to commit a theft from the person a separate and distinct offense from that of theft from the person. It therefore deduces from these quotations the conclusion that, if the attempt to commit any of the various crimes enumerated above is a separate and distinct offense from the actual consummation of the crime, the same rule would apply with equal force to the offense of robbery, since there is a wide and well-marked distinction between the offense of robbery and that of attempting or undertaking to rob.

According to the contentions of the defendant in error as outlined under the uncontradicted facts in this case, it would only be held liable to pay the amount offered by it to some officer or employee of the bank who had captured Blasingame while he was undertaking to get manual possession of the money in the manner he did, but before he had succeeded. It is our opinion that this construction of the words "undertaking to rob or burglarize" the bank, as used in the

instrument quoted, is not in harmony with the ultimate purpose of the defendant in error in offering the reward. The defendant in error was receiving premiums from the bank, in consideration of which it had obligated itself to protect the bank from ultimate loss of any of its personal property, and especially any of its money, from the acts of persons seeking to deprive the bank of it by force or through fear used by another upon those lawfully in charge of it. Indeed, it would seem that the defendant in error itself admits in its brief that its purpose in offering this reward was to prevent a loss to the bank under such circumstances as would make it liable therefor. After quoting the language of the offer to pay the $1,000, in discussing the language of it, we find the defendant in error, in its brief, has stated:

"What was the intent of the bonding company when this offer of reward was made? For what purpose was it offered? The purpose of the reward clearly was to arouse the officer or employee of the bank (and whom it is presumed would be present at the bank) from an attitude of nonresistance to that of stubborn resistance. The temptation might be for the officers or employees of the bank, when the bank was being robbed, to fold their hands and serenely await the result, for the reason that they knew the loss which would result from such burglary or robbery was covered by insurance, and there was, therefore, no necessity for them to jeopardize their lives in resisting the robber or trying to apprehend him. To avoid just such a situation the thought in the mind of the insurance company was that, if the offer of $1,000 would spur the officer or employee to the point of resistance and to the point of apprehending the burglar before he got away with the loot and while it was on his person, it might save the company a loss."

[7] The testimony, without dispute, shows that the plaintiffs in error did prevent a loss to the defendant in error by pursuing and capturing Blasingame before the latter had succeeded in creating a loss to the bank so as to make it liable to the bank by reason of the act of Blasingame. The energy displayed by the plaintiffs in error under the circumstances wherein a loss was threatened to the bank for which the defendant in error would have been liable, but for the result of the efforts of the plaintiffs in error, saved the defendant in error such threatened loss by arresting Blasingame while he was undertaking to rob the bank, but which the testimony shows he had not succeeded in completing to that extent so as to make the defendant in error liable for any loss occasioned by such undertaking. At the time Blasingame was actually taken into custody he was undertaking to accomplish a purpose which, had he succeeded, would have rendered the defendant in error liable to the bank for the loss thus occasioned. Had the plaintiffs in error not acted at the time and in the manner they did, Blasingame would have completed his undertaking and a situation would have been created thereby which would have rendered defendants in error liable to pay the bank the loss occasioned by the success of Blasingame's undertaking. Since we have seen that it was evidently the intention of the defendant in error in offering the reward to create an inducement, on the part of the officers of the bank, to act in such a way as to relieve the defendant in error from liability under a situation presented by the testimony in this case, and since the testimony, without dispute, shows that the acts of the plaintiffs in error were in harmony with this intention, and secured the result sought to be secured by the defendant in error, we are of the opinion that the conditions in this respect were fully met by the uncontradicted facts in the case.

[8, 9] But the defendant in error further contends that, even though none of its other contentions could be sustained, yet, nevertheless, the plaintiffs in error cannot recover, because, as alleged by it, the arrest of Blasingame was illegal, correctly asserting that, if the arrest was illegal, no recovery could be had. In sustaining this contention of the defendant in error, the Court of Civil Appeals only discusses article 212 of the Code of Criminal Procedure 1925, which reads as follows:

"A peace officer or any other person, may, without warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony, or as an 'offense against the public peace.'"

Since the testimony of this case shows without contradiction that the offense committed by Blasingame was not committed in the presence or within the view of either of the plaintiffs in error, it is clear that the subsequent arrest by virtue of this article alone would not have been legal. But we do not think the article quoted is applicable to the facts in this case. Upon the contrary, we think article 325 of the Code of Criminal Procedure 1925, under the facts which are without substantive contradiction, fully justifies the contention of the plaintiffs in error that the arrest of Blasingame was legal. While we have given a brief outline of the situation of the parties at the time the arrest was made, the opinion of the Court of Civil Appeals more clearly and fully states the facts, to which opinion we refer. Article 325 is as follows:

"All persons have a right to prevent the consequences of theft by seizing any personal property which has been stolen, and bringing it, with the supposed offender, if he can be taken, before a magistrate for examination, or delivering the same to a peace officer for that purpose. The justify such seizure, there must, however, be reasonable ground to suppose the property to be stolen, and the seizure must be

openly made and the proceedings had without delay."

[10] The owner or lawful custodian of stolen property, by virtue of the rights and privileges given him, under the article above quoted, has the right to pursue the thief and recapture property which has been stolen without a warrant of arrest. He also has the right to arrest the thief and take him to a magistrate or peace officer, provided this is done openly and the procedure be had without delay. However, this right does not authorize the owner to pursue and take the life of the supposed thief; that is to say, it does not authorize the owner to kill the thief, should the latter make resistance merely to effect a recovery of the stolen property. Porez v. State, 29 Tex. App. 616, 16 S. W. 750. The private person, acting by virtue of the authority given him under this article, for the time being is an officer de facto, invested with all the privileges and burdened with all the penalties of an officer de jure. Smith v. State, 13 Tex. App. 507; Morris v. Kasling, 79 Tex. 141, 15 S. W. 226, 11 L. R. A. 398. By virtue of article 325, all persons have a right to prevent the consequences of theft, not only by seizing the property which has been stolen, but by arresting the offender. Moreover, in attempting to do these things authorized by this article, persons so acting would not be guilty of false imprisonment, should there be reasonable ground to suppose the property stolen, and the party taken to be the offender, notwithstanding it should thereafter transpire that the property was not stolen, and that the person taken was not a thief. The very language of the statute shows this to be the situation, because the statute says that, to justify such seizure, there must be reasonable grounds to suppose the property to be stolen. Had Blasingame brought a suit against the plaintiffs in error for damages alleging false imprisonment, under the facts of this case, he could not have recovered anything, because the right of the plaintiffs in error to take him in custody by virtue of this article would have prevented a recovery. In such a suit by Blasingame the court would have been compelled to hold his arrest legal. Surely the rights of the defendant in error, with reference to this particular matter, could not be superior to that of Blasingame. The language in the article is to the effect that, to justify such seizure of the property and of the supposed offender, there must be reasonable grounds to suppose the property to have been stolen. Furthermore, under the facts in this case, had the plaintiffs in error taken into custody one innocent of having taken the bank's money at the time and place they arrested Blasingame, and had they followed this arrest by delivering this innocent person to a peace officer to be taken before a magistrate for an examina-tion, as was done in this case, and had a court, in a suit brought by this innocent person for damages, alleging false imprisonment against the plaintiffs in error, found that there was reasonable grounds to suppose the property in his possession to have been stolen, though it had not been, no recovery could have been had. This would be true because the arrest of the innocent party under such circumstances would have been legal, and, being legal in one case, it would be, under the same facts and circumstances, legal in all cases, as we think the arrest of Blasingame was in this case. Marking v. Needy, 71 Ky. (8 Bush) 22.

We therefore recommend that the judgment of the Court of Civil Appeals rendered in this case be reversed, and the judgment of the district court be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed, as recommended by the Commission of Appeals.