Mrs. Frances D. BURNAMAN et al.,
Plaintiffs,

v.

J. C. PENNEY COMPANY, Defendant.

Civ. A. No. 12323.

United States District Court
S. D. Texas,
Houston Division.

March 8, 1960.

E. W. Newman, Houston, Tex., for plaintiffs.

Baker, Botts, Andrews & Shepherd, Charles L. Tighe, Houston, Tex., for defendant.

INGRAHAM, District Judge.

Action for false imprisonment, assault, and slander instituted by Mrs. Frances D. Burnaman and Alton Earl Burnaman, a minor, who sued by and through his mother and next friend, Mrs. Frances D. Burnaman, against J. C. Penney Company. Since this action was filed Alton Earl Burnaman has married and reached the age of 21 years, so that he now maintains his action in his own right. The case was tried before the court without a jury and is submitted for judgment upon the briefs of the parties.

The incident from which these claims arose occurred on the premises of defendant's store at 3938 North Shepherd Drive, Houston, Texas, on December 19, 1957, between the hours of 7 p. m. and 8:45 p. m. Plaintiffs allege that they had gone into defendant's store to do Christmas shopping. Mrs. Burnaman is a paraplegic and can move about only with the use of a wheelchair. On this occasion Alton Earl Burnaman was pushing his mother in a wheelchair while she shopped. While on defendant's premises they shopped for a dress for Mrs. Burnaman and were assisted by Mrs. Linda Tatum Johnson, an employee of defendant; however, no dress was purchased.

As they were leaving defendant's store, plaintiffs were stopped by an assistant manager, Mr. Harold E. Brasier, who placed himself in front of Mrs. Burnaman and dropped some coins on and around her, so that he might stoop down and determine whether she was concealing any property stolen from the store on her person. While Mr. Brasier testified that he only touched Mrs. Burnaman's lap, plaintiffs contend that he felt about her body and the wheelchair. Meanwhile, he asked her, "What did you do with the merchandise?" Mrs. Johnson, accompanied by another employee, joined Brasier and asked, "Where is that red dress?" Plaintiffs contend that Mrs. Johnson searched Mrs. Burnaman, feeling about her body and under her clothing. Plaintiffs proclaimed their innocence and told defendant's employees that they had not stolen any merchandise. No merchandise was found in the possession of either plaintiff.

The parties dispute the circumstances under which this incident occurred. Plaintiffs contend that they were detained against their will in the midst of other people who gathered about or were walking by the scene of the incident. They maintain that defendant's employees shouted at them and imposed a restraint upon them that they could not reasonably disregard. They state that they were detained for about thirty minutes. Defendant contends that plaintiffs were not detained against their will, since they did not attempt to leave the area and a conflict of evidence exists on the issue of whether they were frightened. It maintains that the incident did not occur in the presence of many people, that defendant's employees did not use loud tones in addressing plaintiffs, and that plaintiffs were not detained for a long period.

Concerning these circumstances the court believes that there must have been a number of people passing by the store on a shopping evening a week before Christmas, that defendant's employees spoke in clearly audible tones, and that plaintiffs must have been detained for some period of time. The issues concerning the mental and emotional state of plaintiffs during this period of detention are difficult to determine, but it would appear that plaintiffs felt restrained and unable to depart. Judging by the physical aspects of the situation, one would say that an invalid woman in a wheelchair, pushed by her minor son, could be more readily detained than a person not so incapacitated. If Mr. Brasier merely placed himself in front of the wheelchair, he would create an obstacle around which a slowly-moving wheelchair would have to be pushed.

Defendant contends that its employees were reasonably exercising their right to prevent the consequences of a theft which they reasonably believed had been committed. It would show that Mr. Brasier acted upon the reasonable belief that Mrs. Burnaman had taken merchandise without paying for it, that he had been familiar with Mrs. Burnaman for some time, and that he had been told by his salespeople that they had missed merchandise when Mrs. Burnaman had shopped there before. On this occasion he was told by Mrs. Johnson that she had seen Mrs. Burnaman take a red dress. Defendant maintains that Mr. Brasier acted reasonably, rather than capriciously or maliciously, and that Mrs. Burnaman clearly realized what his purpose was.

The court will consider first the question of false imprisonment. Plaintiffs contend that they were falsely imprisoned because defendant's employees willfully detained them without authority of law and against their consent. They rely upon the definition of false imprisonment in Article 1169 of the Texas Penal Code, which is also the standard in civil actions:

"False imprisonment is the wilful detention of another against his consent and where it is not expressly authorized by law, whether such detention be effected by an assault, by actual violence to the person, by threats or by any other means which restrains the party so detained from removing from one place to another as he may see proper."

Defendant contends that plaintiffs were not falsely imprisoned because they were not detained against their will and because there is no liability for false imprisonment where its employees detain persons whom they reasonably believe have taken merchandise without paying for it. They rely upon Article 325 of the Code of Criminal Procedure of the State of Texas to show that this detention was expressly authorized by law if defendant's employees had reasonable ground to suppose the property to be stolen. Article 325 reads as follows:

"All persons have a right to prevent the consequences of theft by seizing any personal property which has been stolen, and bringing it, with the supposed offender, if he can be taken, before a magistrate for examination, or delivering the same to a peace officer for that purpose. To justify seizure, there must, however, be reasonable ground to suppose the property to be stolen, and the seizure must be openly made and the proceedings had without delay."

The court believes that reasonable grounds for searching a suspected offender in order to prevent the consequences of theft are a defense to an action for false imprisonment by virtue of Article 325. The Texas courts have held that a house detective, charged with the duty of investigating the reported loss of money by a guest in a hotel, under certain conditions can arrest and detain a chambermaid and deliver her to the custody of the city police without incurring liability for false imprisonment by virtue of Article 325, even though the money was found in the guest's quarters soon thereafter. Citizens Hotel Co. v. Foley, Tex.Civ.App., Fort Worth 1939, 131 S.W.2d 402, writ dism. judgm. cor., citing Henderson v. United States Fidelity & Guaranty Co., Tex.Com.App. 1928, 298 S.W. 404, no writ history rehearing denied Tex.Com.App., 10 S.W. 2d 534. The Citizens Hotel case was remanded for new trial upon various questions of fact, including the reasonableness of the house detective's supposition that the chambermaid was in possession of stolen property. In Citizens Hotel, as in the case at bar, there was a fruitless search for supposed stolen property.

The Citizens Hotel case directly involved the effect of Article 325 in an action for false imprisonment and held that it raised a question of the reasonableness of the actions of defendant's employee. It reinforces the analysis of the effect of Article 325 in an action for false imprisonment given in the Henderson case, where the point was not in issue. Plaintiffs' authorities showing that probable cause is not a defense in a civil action for false imprisonment undoubtedly stated the law before the Citizens Hotel case in 1939 but cannot be considered persuasive in its aftermath.

Concerning the claim for false imprisonment, the court finds the following questions of fact before it: (1) Did defendant's employees willfully detain plaintiffs? (2) Was the detention without plaintiffs' consent? (3) Was the detention without authority of law? From the discussion of the facts above, it is apparent that there was a willful detention of plaintiffs without their consent. Further, the court finds that the detention was not without authority of law, because defendant's em-

ployees acted reasonably in their supposition that Mrs. Burnaman was in possession of stolen property. Mrs. Johnson testified that they had missed merchandise when Mrs. Burnaman had shopped there before and that she had talked with Mr. Brasier about it. Since defendant's employees did act with authority of law under Section 325, plaintiffs have not shown a good claim for false imprisonment.

The court will consider now the question of assault. Plaintiffs contend that defendant's employees committed an aggravated assault upon Mrs. Burnaman within the terms of Article 1147 of the Texas Penal Code, which is the standard in civil actions. Article 1147 states that an assault and battery becomes aggravated when committed by a person of robust health or strength upon one who is aged or decrepit. Article 1138 defines assault and battery as follows:

"The use of any unlawful violence upon the person of another with intent to injure him, whatever be the means or the degree of violence used, is an assault and battery. Any attempt to commit a battery, or any threatening gesture showing in itself or by words accompanying it, an immediate intention, coupled with an ability to commit a battery, is an assault."

Defendant contends that the question of assault is taken out of the case by the legality of the actions taken by its employees. Since a search would be a legal incident of the detention or arrest under Article 325, the claim for assault would fall with the claim for false imprisonment since the two are interrelated. There is certainly no evidence of a violent assault; no bruises, contusions or fractures. Evidence of assault does not go beyond what would reasonably be necessary to effect a lawful search.

The court believes that plaintiffs have failed to state a claim for assault because defendant's employees were acting lawfully in detaining, searching, and touching Mrs. Burnaman. This finding arises not only from the close relationship between the alleged false imprisonment and the alleged assault but from provisions of the Texas Penal Code which define "lawful violence" and which justify the actions taken by defendant's employees. Article 1138, defining assault and battery, requires the use of "unlawful violence". Article 1142 defines "lawful violence" as follows:

"Violence used to the person does not amount to an assault or battery in the following cases:

\*       \*       \*       \*       \*       \*

"3. To preserve the peace, or to prevent the commission of offenses.

"4. In preventing or interrupting an intrusion upon the lawful possession of property.

"5. In making a lawful arrest and detaining the party arrested, in obedience to the lawful order of a magistrate or court, and in overcoming resistance to such lawful order.

\*       \*       \*       \*       \*       \*

"7. Where violence is permitted to effect a lawful purpose, only that degree of force must be used which is necessary to effect such purpose."

■ The lawful actions taken by defendant's employees under Article 325 are covered by all or several of these definitions of "lawful violence" and serve to vitiate plaintiffs' claim for assault.

■ The court will consider now the question of slander. Plaintiffs contend that by reason of the circumstances in which defendant's employees asked them "What did you do with the merchandise?" and "Where is that red dress?", these statements amounted to an accusation of theft and constituted slander. They maintain that these statements were published because many people had gathered about the scene of the incident. Defendant contends that these statements were not slanderous per se and could only become so by innuendo added by plaintiffs. It maintains that plaintiffs have not shown publication of the alleged slander because no showing has been made that anyone who may have heard the remarks understood them to charge

a crime. It claims that plaintiffs must show that, assuming someone other than a party to the incident did overhear the remarks made by Mrs. Johnson and Mr. Brasier, these persons chose to interpret the words as charging theft, citing Montgomery Ward & Co. v. Peaster, Tex.Civ. App.1944, 178 S.W.2d 302, no writ history. There is no evidence in this case that one hearer understood the words in the defamatory sense necessary for publication. Plaintiffs have failed to prove a claim for slander because they have not shown the necessary publication.

Defendant's motion for judgment will be granted. The clerk will notify counsel to prepare and submit judgment accordingly.