**Jessie JAMES, suing in his own behalf and on behalf of all others similarly situated, Plaintiff-Appellee,**

**v.**

**James PINNIX, d/b/a Pinnix Used Cars, individually and as representative of all others similarly situated, Defendant-Appellant.**

**No. 73–1866.**

United States Court of Appeals, Fifth Circuit.

June 10, 1974.

Richard B. Wilson, Jr., Charles R. Gear, Francis S. Bowling, Jack S. Parker, Sp. Asst. Atty. Gen., Jackson, Miss., for defendant-appellant.

John L. Maxey, II, Barry H. Powell, John L. Walker, Jr., Community Legal Services, Jackson, Miss., for plaintiff-appellee.

Before BROWN, Chief Judge and GODBOLD and CLARK, Circuit Judges.

GODBOLD, Circuit Judge:

Jessie James, the appellee, bought a used Ford sedan from the appellant, James Pinnix, for $495. He paid $200

down[1] and signed a contract in which he agreed to pay off the balance at $15 per week. The contract provided that upon default by appellee the appellant could take possession of the car and sell it with or without notice. Appellee eventually stopped making payments,[2] and at the end of about a half-year the appellant repossessed the car via "self-help," towing it away from in front of appellee's house[3] without first initiating suit or otherwise invoking official processes, and without affording appellee preseizure notice[4] or opportunity to be heard. Appellee then brought suit, alleging a 42 U.S.C. § 1983 cause of action and 28 U.S.C. § 1343(3) jurisdiction. The District Court permitted the suit to go forward as a class action,[5] ordered the car returned to appellee, and enjoined appellant from taking the car again without affording appellee prior notice and an opportunity for preseizure hearing, absent a *knowing and intelligent waiver* by appellee of his possessory rights. Also, the court declared Mississippi Code 1972 Ann. § 75–9–503 [5a] (§ 9–503 of the Uniform Commercial Code) void and unenforceable insofar as it authorizes summary seizure. Finally, the court enjoined appellant and the members of his class from further summary seizures.

On this appeal appellant urges that since repossession of collateral by self-help does not involve state action, appellee has failed to state a claim under 42 U.S.C. § 1983. Like the two circuit courts that have already considered the matter,[6] we hold that there was no state action and therefore reverse.

Appellee has no federal right to redress for appellant's interference with his property interests unless that interference involved state action. To support the existence of state action appellee urges the applicability of the leading case of Hall v. Garson, 430 F.2d 430 (CA5, 1970), in which this circuit found state action in the behavior of a Texas landlady who entered a tenant's apartment without giving notice or resorting to official processes and seized goods to satisfy the tenant's past due rent liability. In *Hall* we held that

> the action taken, the entry into another's home and the seizure of another's property, was an act that possesses many, if not all, of the characteristics of an act of the State. The execution of a lien, whether a traditional security interest or a quasi writ of attachment or judgment lien has in Texas traditionally been the function of the Sheriff or constable. Thus [the chal-

1. $150 in cash and $50 in the form of a traded-in 1962 Chevrolet.

2. Appellee claimed he had experienced difficulties with the car and that appellant, upon being informed of them, had told him to make no more payments. Appellant denied having been told about any difficulties. Because of the view the District Court took of the legal issues, this factual dispute and several other factual matters were not resolved below.

3. Appellant in an affidavit stated that when he located the car in front of appellee's house, it was missing two wheels and its battery.

4. Appellant's affidavit stated that he knocked on appellee's door just before effecting the repossession, but that no one answered although noise and music were coming from inside the house.

5. Appellee's class was composed of all residents of the State of Mississippi whose property may in the future be seized by a

secured creditor under a security agreement, without use of judicial process and without the consent of the owner of the property, without prior notice and without affording the opportunity for a judicial pre-seizure hearing to determine possessory rights to the property. The appellant's class was composed of all creditors who hold security interests in personal property situated in the State of Mississippi and owned by individuals residing in the State of Mississippi.

5a. Section 75–9–503 reads in relevant part:
Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action.

6. Adams v. Southern California First National Bank, 492 F.2d 324 (CA9, 1973); Bichel Optical Laboratories v. Marquette National Bank, 487 F.2d 906 (CA8, 1974).

lenged lien statute under whose aegis the landlady had acted] vests in the landlord and his agents authority that is normally exercised by the state and historically has been a state function. 430 F.2d at 439 (footnote omitted). The *Hall* state function concept does not carry over to the present case with sufficient force to compel a finding of state action. In *Hall* the landlady seized goods to satisfy a debt arising out of an agreement having nothing to do with the goods. Such a taking closely resembles a seizure in satisfaction of a judgment —a function traditionally performed by a sheriff or other state agent. In the present case, by contrast, the appellant-creditor possessed and claimed no roving commission to extract appellee's goods to satisfy a separate debt. Rather, he had a specific purchase money security interest in a particular item, and he seized only that item. His action, moreover, was by long Mississippi tradition the sort of action performed by private persons, not state officials. *See* Commercial Credit Co. v. Spence, 185 Miss. 293, 184 So. 439 (1938). Finally, seizure by entry into a dwelling, in *Hall* a major decisional factor because it was deemed an indicium of state-like behavior, was absent from the instant case.

Moose Lodge No. 107 v. Irvis, 407 U. S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), does not compel a holding of state action. There the Supreme Court rejected the argument that the Pennsylvania Liquor Control Board's pervasive regulation of a liquor-licensed private club amounted to such significant state involvement as to make the club's racially discriminatory guest policy state action.[7] The Court also held, however, that application of a liquor board regulation requiring all clubs to adhere to their own constitutions and by-laws would result in invoking the sanctions of the state to enforce discriminatory rules in those instances where the private provisions required racial discrimination, and that therefore the regulation was enjoinable.

Appellee suggests that § 9–503 overtly encourages private interference by secured creditors with property interests in a manner analogous to the operation of the offending liquor board regulation. The analogy has some validity. One can erect an argument that § 9–503 backs up creditors in enforcing contracts providing for procedureless interferences with property interests just as the regulation in *Moose Lodge* backed up and gave effect to private clubs' racially discriminatory by-laws. We cannot avoid the force of the analogy by labelling § 9–503 "neutral" or by stating that it does not "encourage" creditors to interfere with debtors' property.[8] Nevertheless, *Moose Lodge* is still distinguishable, because it involved racial discrimination, behavior that since Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), courts have come to look upon as very nearly *malum in se*. The outer boundaries of "imputed" state action have been charted primarily in race discrimination cases. We are unwilling to push out the frontiers still farther in a case devoid of racial overtones.[9]

The same consideration compels us to reject appellee's argument based on Reitman v. Mulkey, 387 U.S. 369, 87 S. Ct. 1627, 18 L.Ed.2d 830 (1966). There again racial discrimination was involved. Moreover, the indicia of state involvement were much stronger, because, as the opinion made clear, the purpose of the challenged state constitutional amendment was to authorize private dis-

---

7. Based on this facet of *Moose Lodge*, we reject appellee's argument that the pervasive state regulation of credit transactions—as shown by Miss.Code 1972 Ann. §§ 75–9–502 to 75–9–507, 63–19–31 (regulating the details of installment sales contracts), etc.— makes self-help repossession state action. See *Adams, supra*, 492 F.2d at 334.

8. See Kirksey v. Thelig, 351 F.Supp. 727, 731 & nn. 7–8 (D.Colo.1972).

9. See Oller v. Bank of America, 342 F.Supp. 21, 23 (N.D.Cal.1972).

crimination in the transfer of real property where before it had been barred by statute.

A number of courts in § 9–503 cases have rejected debtors' *Reitman* contentions by holding that the UCC did not "create the right" to repossess via self-help, that the right flows exclusively from contract and was recognized at state common law. We prefer not to follow that line of analysis-by-characterization. See Judge Byrne's dissent in *Adams,* 492 F.2d at 338. Were we to follow it, the answer it would yield when applied to Mississippi law would be uncertain. There is a reasonable, albeit conceptual, argument that the Mississippi legislature intended Article 9 of the UCC to supplant preexisting law and that therefore the power to repossess flows from § 9–503 today even though it was *recognized in pre-UCC Mississippi* common law. Even setting that argument to one side, the fact is that Mississippi cases did not sanction self-help repossession except when provided for in the parties' contract, whereas § 9–503 allows it even when the contract is silent on the point.[10] Thus the creditor's arguments that § 9–503 merely carried forward the former Mississippi practice and that the *contract is the sole source* of summary repossession power, lose some force.[11]

No bright lines can be drawn in this area, and we draw none. Some state involvement in the *Reitman-Moose Lodge* sense may be present here, but it is simply not enough, given the nonracial nature of the case, to constitute state action. *See* Kirksey v. Thelig, *supra,* at 732–733.

We reject appellee's contention that Mississippi creditors are joint participants with the state under United States v. Price, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966). Nor is Peterson v. City of Greenville, 373 U.S. 244, 83 S.Ct. 1119, 10 L.Ed.2d 323 (1963), apposite. There a store manager's action in asking ten black youngsters to leave the "whites-only" area of a restaurant and in calling upon the police to speed their departure became state action, because the state had "commanded a particular result," had "become involved" in it, and had "removed [the] decision [whether or not to maintain segregated facilities] from the sphere of private choice." 373 U.S. at 248, 83 S.Ct. at 1121, 10 L.Ed.2d at 326. *Peterson* obviously involved racial discrimination and turned upon the existence of a city ordinance requiring segregation in restaurants. Whatever else it may do, § 9–503 assuredly does not *require* creditors to contract for or to exercise the power of summary repossession.

Reversed.

---

10. But not when the contract expressly forbids it. Section 9–503 reads, "Unless otherwise agreed," self-help is permitted.

11. The class of debtors defined in the order of the District Court conceivably could include persons whose goods were summarily seized even though the contracts they signed contained no clause authorizing such action.