Harry H. and Thelma GIBBS, and Ella Lemar, on Their Own Behalf and on Behalf of All Others Similarly Situated, Appellants in No. 74–1067,

Commonwealth of Pennsylvania ex rel. Israel Packel, Intervenor Plaintiff,

v.

William A. TITELMAN, Individually and as Director of the Bureau of Motor Vehicles of the Commonwealth of Pennsylvania.

Appeal of GENERAL MOTORS ACCEPTANCE CORPORATION, in No. 74–1062.

Appeal of CHRYSLER CREDIT CORPORATION, in No. 74–1063.

Appeal of PROVIDENT NATIONAL BANK, in No. 74–1064.

Appeal of GIRARD TRUST COMPANY, in No. 74–1065.

Appeal of FORD MOTOR CREDIT COMPANY, Intervenor Defendant, in No. 74–1066.

Nos. 74–1062 to 74–1067.

United States Court of Appeals, Third Circuit.

Argued May 31, 1974.

Decided Aug. 1, 1974.

**1108**

W. Bradley Ward, Ira P. Tiger, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellant in No. 74–1062.

Oliver C. Biddle, Leonard C. Homer, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for appellant in No. 74–1063.

Tyson W. Coughlin, Philadelphia, Pa., for appellant in No. 74–1064.

Gordon W. Gerber, John J. Brennan, Dechert, Price & Rhoads, Philadelphia, Pa., for appellant in No. 74–1065.

George J. Miller, Dechert, Price & Rhoads, Philadelphia, Pa., for appellant in No. 74–1066.

David A. Scholl, Chester, Pa., for appellants in No. 74–1067 and for appellees in Nos. 74–1062, 74–1063, 74–1064, 74–1065, 74–1066.

James R. Adams, Harrisburg, Pa., Lawrence Silver, Philadelphia, Pa., Israel Packel, Harrisburg, Pa., for William A. Titelman and Commonwealth of Pennsylvania.

Richard A. Hesse, Boston, Mass., for National Consumer Law Center, Inc., amicus curiae.

Joseph P. Gaffney, Jr., Harold J. Conner, Philadelphia, Pa., for Pennsylvania Consumer Finance Association, amicus curiae.

Floyd W. Tompkins, Edward C. Toole, Jr., Alexander D. Kerr, Jr., Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for Pennsylvania Credit Union League, amicus curiae.

Morton Newman, Neal Steinman, Ronald H. Surkin, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., Eli S. Silberfeld, New York City, for National Commercial Finance Conference, Inc., amicus curiae.

Before VAN DUSEN, HUNTER and GARTH, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

This is an appeal from the judgment of the United States District Court for

the Eastern District of Pennsylvania declaring unconstitutional certain provisions of the Pennsylvania Motor Vehicle Sales Finance Act ("MVSFA")[1] and the Pennsylvania Uniform Commercial Code ("UCC")[2] insofar as they permit creditors to repossess automobiles peaceably without resort to judicial process upon default by debtors.[3] This Court has jurisdiction pursuant to 28 U.S.C. §§ 2201 & 1291. We reverse.

This case was tried as a class action under the Civil Rights Act, 42 U.S.C. § 1983 & 28 U.S.C. § 1343 based upon the claim that the repossessions of automobiles subject to security interests were made under "color of . . . State law, statute, ordinance, regulation, custom or usage"[4] and in violation of due process because effective without notice and opportunity for a hearing.

Each of the named appellees financed the purchase of an automobile either through an installment sale contract or a loan agreement which required periodic payments over a specified period of time. Each named appellee had created a security interest in his automobile as collateral security for the indebtedness. The agreements provided that, in the

event of default by an appellee, the creditor would have the right to retake the automobile, with or without judicial process—a practice commonly referred to as self-help repossession.[5]

The challenged statutes neither compel nor prohibit peaceable self-help repossession. Section 9–503 of the UCC, 12A Pa.Stat. § 9–503 provides:

"Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action."

Section 23 subd. A of the MVSFA, 69 Pa.Stat. § 623, subd. A provides:

"When the buyer shall be in default in the payment of any amount due under a motor vehicle installment sale contract or when the buyer has committed any other breach of contract, which is by the contract specifically made a ground for retaking the motor vehicle, the seller or any holder, who has lawfully acquired such contract, may retake possession thereof. Unless the motor vehicle can be retaken without breach of the peace, it shall

---

1. The sections in question are: 69 Pa.Stat. § 623 (Repossession), § 624 (Reinstating of Contract After Repossession), § 625 (Redemption and Termination of Contract After Repossession), § 626 (Sale of Motor Vehicle After Repossession), and § 627 (Deficiency Judgment).

2. The sections in question are: 12A Pa.Stat. § 9–503 (Secured Party's Right to Take Possession After Default), and § 9–504 (Secured Party's Right to Dispose of Collateral After Default; Effect of Disposal).

3. Appellants contend that the district court's judgment is even broader in scope, but in view of our disposition of this case, we need not reach this question.

4. 28 U.S.C. § 1343(3).

5. The sale contracts received in evidence in this case provided:
"a. 'In the event the buyer defaults . . . the seller . . . may take immediate possession of said property without demand . . . and for this purpose the seller may in a lawful manner only,

enter upon the premises where said property may be and remove same. . . .' (GMAC form.)
"b. 'Upon the occurrence of an event of default . . . Buyer and each Co-Buyer, jointly and severally, hereby authorize and empower Seller or Seller's Assignee . . . to take immediate possession of said car, wherever found, . . . with or without legal process. . . .' (The Gibbs contract.)
"c. 'If Buyer defaults . . . Seller . . . may enter the premises where the property may be and take immediate possession of the property. . . .' (Chrysler's form.)
"d. 'In the event Buyer defaults . . . Seller shall have . . . the right to repossess the Property wherever the same may be found with free right of entry. . . .' (Ford's form.)
"e. 'In the event of a default, seller shall have the right to . . . enter any premises and without breach of the peace take possession of the vehicle. . . .' (Girard's installment sale contract.)"

**1110**

be retaken by legal process, but nothing herein shall be construed to authorize a violation of the criminal law."

The district court found that there was sufficient state involvement to constitute "state action" and held that under Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), lack of prior notice and an opportunity to be heard renders extra-judicial repossession unconstitutional. Since we believe that the requisite "state action" is not present and that therefore a cause of action under 42 U.S.C. § 1983 has not been alleged, we need not reach the due process issue.[6]

■■ It is well-settled that the fourteenth amendment applies only to actions of the "States" and not to actions which are "private." Under 42 U.S.C. § 1983, the "under color of state law" requirement is the same as the "state action" requirement of the fourteenth amendment. Adickes v. S. H. Kress & Co., 398 U.S. 144, 152 n. 7, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); United States v. Price, 383 U.S. 787, 794–795 n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966).[6a]

Unlike pre-judgment seizures recently considered by the Supreme Court in which state action was clearly present,[7] the seizures complained of here were effected by private individuals without the aid of any state official. Therefore, absent direct state involvement by the State of Pennsylvania, appellees' claim of "state action" rests on one of two general theories: 1) by comprehensively

regulating the field of automobile financing, without prohibiting the practice of self-help repossession, the State of Pennsylvania has become so involved and has so encouraged this private remedy that it becomes "state action," or 2) by allowing the practice of self-help repossession, the State of Pennsylvania has abdicated or delegated to private individuals a traditional state function, thus infusing the private act of repossession with "state action."

## COMPREHENSIVE STATE REGULATION

Unquestionably the legislature of Pennsylvania, in enacting the MVSFA, comprehensively sought to regulate the area of automobile financing.[8] But the act complained of—i. e., the seizure of appellees' automobiles—is neither compelled[9] nor prohibited by the MVSFA. The statute simply permits what private parties have agreed upon. Section 23 of the MVSFA, 69 Pa.Stat. § 623 provides that the creditor "may retake possession" peaceably, without resort to legal process, if the default "is by the contract specifically made a ground for retaking the motor vehicle."

■ . Under the MVSFA, self-help repossession remains a private remedy enforced by purely private conduct pursuant to an agreement made privately and not under state compulsion. Thus, the state plays no significant role. Where, as here, "the impetus for the [act complained of] is private," we are simply unable to conclude, as required under Moose Lodge v. Irvis, 407 U.S. 163, 173,

6. We therefore need not discuss the impact of Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), which was decided subsequent to the district court's decision. Cf. Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S. Ct. 2080, 40 L.Ed.2d 452 (1974).

6a. We do not express any opinion as to the reach of the fourteenth amendment with respect to "private" action under 42 U.S.C. § 1985.

7. Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct.

1983, 32 L.Ed.2d 556 (1972); Sniadach v. Family Fin. Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

8. See Report, Joint State Government Commission, 1945–47 (March 21, 1947); 69 Pa. Stat. § 602 (preamble to MVSFA).

9. This appeal therefore does not present us with the situation where a "state statute or custom or usage compels the result." Jackson v. Metropolitan Edison Co., 483 F.2d 754 (3d Cir. 1973), interpreting Adickes v. Kress, 398 U.S. 144, 90 S.Ct. 1598, 26 L. Ed.2d 142 (1970).

92 S.Ct. 1965, 1971, 32 L.Ed.2d 627 (1972), that the State of Pennsylvania has "*significantly* involved itself" in the alleged conduct so as to constitute "state action." (Emphasis added.)

Nor do we believe that by enacting the MVSFA has the State of Pennsylvania formed a "symbiotic relationship" with creditors as was present in Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). *Cf.* Moose Lodge v. Irvis, 407 U.S. 163, 174–175, 92 S.Ct. 1965, 32 L. Ed.2d 627 (symbiotic relationship lacking).

■ Nor do we find in the statutory scheme the kind of encouragement and fosterage of the alleged unconstitutional act as in Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967). In *Reitman,* the State constitutional amendment repealed prior state legislation regulating racial discrimination in housing. Thus, in effect, the State constitutionally authorized discrimination by repealing prior law and by substantially inhibiting any subsequent change.[10]

The case before us is vastly dissimilar to the situation in *Reitman.* Appellees concede that the self-help remedy of repossession "existed in some form in the common law from a very early time." [11]

Unlike *Reitman* then, the State of Pennsylvania has not by the enactment of the MVSFA permitted a practice which was formerly prohibited. It is true, as appellees suggest, that "the protections surrounding the use of [this self-help] remedy have continuously ebbed and flowed." [12] But any encouragement or fosterage of self-help repossession resulting, if at all, from statutory modification of safeguards surrounding this private remedy is indirect and highly conjectural and is simply far less significant than the state involvement in *Reitman.* We think that *Reitman* and *Moose Lodge, supra,* read together, suggest that absent direct state action, private repossessions are not infused with the quality of "state action" unless we can conclude that the involvement of the State of Pennsylvania (through its enactment of the MVSFA) has "significantly" encouraged or fostered self-help repossessions. *Reitman, supra,* 387 U.S. at 380, 87 S.Ct. 1627; *Moose Lodge, supra,* 407 U.S. at 173, 92 S.Ct. 1598. *See Burton, supra,* 365 U.S. at 772, 81 S.Ct. 856. We cannot so conclude.

Actually, far from encouraging private repossessions, the MVSFA was enacted in 1947, among other reasons, to curb the abuses associated with private repossessions.[13] The statute displays a

---

10. *Cf.* Bond v. Dentzer, No. 73–2377, 494 F. 2d 302, at 309–310 (2d Cir., filed March 13, 1974).

11. Brief of Appellees at 38. For a general discussion of the history of the self-help remedy of repossession, see McCall, The Past and Prologue: A History of the Right to Repossess, 47 S.Cal.L.Rev. 58 (1973).

12. Brief of Appellees at 38.

13. The preamble to the MVSFA, 69 Pa.Stat. § 602 provides, inter alia:
"It is hereby determined and declared as a matter of legislative finding:
"(a) That an exhaustive study by the Joint State Government Commission discloses nefarious, unscrupulous and improper practices in the financing of the sale of motor vehicles . . .
\* \* \* \* \*
"(c) That consumers, because of these legal technicalities and because of their

unequal bargaining position, are at the mercy of unscrupulous persons and are being intolerably exploited in the installment purchase of motor vehicles. Such exploitation is evident in the unfair provisions of the installment sale contract, exorbitant charges for credit, extortionate default, extension, collection, repossession and other charges for credit, unconscionable practices respecting execution of contracts, refinancing of contracts, prepayment, refunds, insurance, *repossession* and redemption.
"(d) That practices enumerated, and others equally pernicious, have existed to such an extent that regulation of the installment selling of motor vehicles is necessary to the adequate protection of the public interest. . . .
"Therefore, it is hereby declared to be the policy of the Commonwealth of Pennsylvania to promote the welfare of its inhabitants and to protect its citizens from

noticeable concern for protecting a broad range of consumer interests, including, but not limited to, private repossessions.[14] The MVSFA then not only makes it more difficult to repossess, but also, by protecting various other interests of the buyer, indirectly minimizes the circumstances which give rise to repossessions. We think the Second Circuit's characterization of an installment sales financing act of another state is equally appropriate to the MVSFA:

"The state enactment was ameliMoratory not regressive; it did not 'move in' on the . . . buyers, but rather on the installment sellers.

\* \* \* \* \* \*

"The partnership, if any, is with the purchaser and not the [sellers]. See Adickes v. S. H. Kress & Co., 398 U.S. 146, 90 S.Ct. 1598 (1969)"

Shirley v. State National Bank, No. 73–1783, 493 F.2d 739, at 743 (2nd Cir., filed Feb. 14, 1974).

■ At least an aspect of appellees' argument, distilled to its essence, is that when a state attempts to comprehensive-ly regulate an area of private conduct, its failure to prohibit is equivalent to "state action."[15] Such a rule, however, would virtually obliterate the distinction between state and private action. As the Ninth Circuit noted in Adams v. Southern California First National Bank, 492 F.2d 324, 330–331 (9th Cir. 1973):

"Statutes and laws regulate many forms of purely private activity, such as contractual relations and gifts, and subjecting all behavior that conforms to state law to the Fourteenth Amendment would emasculate the state action concept.[15]

\* \* \* \* \*

"15 . . . If we were to accept the debtors' broad test, it would be very difficult to draw any line between state and private action. Indeed, the creditors point out this difficulty when they argue that if any action in conformance with a state law were state action for purposes of the statute (§ 1983) or the constitutional amendment, then the action of the debtors in withholding

---

abuses presently existing in the installment sale of motor vehicles, and . . . to establish a system of regulation for the purpose of insuring honest and efficient consumer credit service for installment purchasers of motor vehicles; and to provide the administrative machinery necessary for effective enforcement." (Emphasis added.)

14. Provisions relating to repossession include, *inter alia:* 69 Pa.Stat. § 623(A) (self-help repossession permitted only if effected without breach of peace) ; 69 Pa.Stat. § 623(B) (repossession effected only by parties to the transaction or others who meet licensing requirements) ; 69 Pa.Stat. § 623(D) (prompt post-repossession notice) ; 69 Pa.Stat. § 625 (5-day redemption period) ; 69 Pa.Stat. § 624 (reinstatement of contract after repossession).

Provisions designed to protect other interests of the buyer include, *inter alia* : 69 Pa. Stat. § 615(B) (prohibition of acceleration clauses in the event a seller deems himself to be insecure) ; 69 Pa.Stat. § 615(F) (prohibition of provision relieving the holder or his assignee from liability for legal remedies which the buyer may have had against the seller) ; 69 Pa.Stat. § 616 (restriction on assignment of installment sales contract except as to persons licensed as sales finance companies) ; 69 Pa.Stat. § 618 (additional costs included in the financing are limited) ; 69 Pa.Stat. § 619 (finance charges may not exceed specific maximum rates) ; 69 Pa.Stat. § 632 (no contract clause can operate to waive any provisions of Act intended for benefit of buyers).

15. In their brief appellees argue that the sellers have such a greater bargaining position than do buyers, that they can extract from buyers virtually any advantage not prohibited by law. They then suggest:

"The only control, in such a situation, is not what extent the weaker party, not even aware of the extent of his obligation, can compel the stronger party to protect his rights. The only control, in reality, is what the law guarantees to the weaker party, or prevents the stronger party from compelling him to forfeit. . . . By enacting the statute challenged herein, the state has, in a very real sense, determined precisely how repossession will occur. In this context, then, the statutes challenged are not neutral, but actively encourage repossession."

Brief of Appellees at 52.

payments without affording the creditors due process is state action. See [UCC] § 2–717."

■ Lastly, we reject two other contentions of appellees by noting our agreement with the Ninth, Eighth, Fifth and Second Circuits (1) that private repossessions are not infused with "state action" merely because the state enacted sections 9–503 and 9–504 of the UCC,[15a] James v. Pinnix, No. 73–1866, 495 F.2d 206 (5th Cir., filed June 10, 1974); Nowlin v. Professional Auto Sales, Inc., No. 73–1348 and Mayhugh v. Bill Allen Chevrolet Co., No. 73–1450, 496 F.2d 16 (8th Cir., filed April 25, 1974); Shirley v. State National Bank, *supra*; Adams v. Southern California First National Bank, *supra*; and (2) that private repossessions are not infused with "state action" merely because a state issues a certificate of ownership [16] to the secured party enabling it to transfer the automobile to a third party purchaser at a sale following repossession,[17] Nichols v. Tower Grove Bank, No. 73–1621, 497 F. 2d 404 (8th Cir. filed May 13, 1974); Shirley v. State National Bank, *supra*; Adams v. Southern California First National Bank, *supra*.

15a. At oral argument it was represented that all contracts and agreements in issue and in the record contained default and repossession provisions. We therefore are not faced with reaching a determination of "state action" where the documents on which repossession is predicated are silent as to default and repossession remedies and reliance for repossession is based *solely* on 12A Pa.Stat. § 9–503. Accordingly, we do not reach or decide "state action" in such a situation.

16. *See* 75 Pa.Stat. § 101 et seq.

17. The district court impliedly agreed with this when it dismissed from the case defendant Titelman, the Director of the Pennsylvania Bureau of Motor Vehicles, under whose direction such certificates are issued. The district court stated:

"Neither Titelman nor any other state officer is clothed with the authority to enforce these statutes [69 Pa.Stat. §§ 623–627; 12A Pa.Stat. §§ 9–503, 9–504]. The alleged deprivation prescribed by the statutes take place before any action or indeed any knowledge on the part of defendant, Titelman, comes into play.

## DELEGATION OF TRADITIONAL STATE FUNCTION

■ In Evans v. Newton, 382 U.S. 296, 299, 86 S.Ct. 486, 488, 15 L.Ed.2d 373 (1966), the Supreme Court stated:

"Conduct that is formally 'private' may become so intwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action.

. . . [W]hen private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations."

Although we find no similarity between *Evans* (and the cases cited therein) [18] and the present case, appellees nevertheless suggest and the district court agreed that the State of Pennsylvania has delegated to private individuals a traditional state function, i. e., the power to decide that one's rights are superior to another's and to carry out that decision by seizing another's property. We disagree.

\*       \*       \*       \*       \*

"5. The primary purpose of the act (assignment of Certificate of Title) was not designed to establish the ownership or proprietorship of an automobile, but rather to register the name and address of a person having the right to possession, and to furnish persons dealing with one in possession of an automobile a means of determining whether such possession was prima facié lawful. Semple v. State Farm Automobile Ins. Co., 215 F.Supp. 645, 647 (E.D.Pa.1963)."

We agree with the district court's dismissal of Titelman for the reason stated.

18. Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); Pennsylvania v. Board of Trusts, 353 U.S. 230, 77 S.Ct. 806, 1 L.Ed.2d 792 (1957); Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953), Public Utilities Comm'n v. Pollak, 343 U.S. 451, 72 S. Ct. 813, 96 L.Ed. 1068 (1952); Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946).

Probably the chief obstacle to concluding that self-help repossession involves a traditional state function is the fact, recognized by the district court and the appellees, that in one form or another the common law very early recognized repossession as a private remedy. As the Ninth Circuit has noted, "[b]ased on this history, it does not appear likely that the Fourteenth Amendment, when written, was intended to eliminate self-help in light of the prevailing use of peaceful repossession."[19] We do not believe, moreover, that this obstacle can be surmounted by concluding as the district court did that this self-help remedy was not a "historically sound principle of the common law" and that it "ought never have been deemed applicable to the American state of society."

Nor do we believe that the district court was correct in reading Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L. Ed.2d 556 (1972), as suggesting that "state action" encompasses any abdication by the state of "the power to decide that your rights are greater that another's."[20] Although *Fuentes* clearly involved state action,[21] the plurality opinion nonetheless spoke of a state's abdication of effective control over "state power."[22] However, contrary to what the district court suggested, the "state power" to which *Fuentes* referred was the use of state power in the form of state officers to accomplish the seizures for the creditor. The plurality

opinion recognized that at common law a creditor could "invoke *state power*" through the action of debt or detinue or alternatively a "creditor could . . . proceed *without the use of state power*, through self-help, by 'distraining' the property before a judgment."[23] The dissent in *Fuentes* also read the majority opinion as clearly distinguishing between state action and purely private action such as repossession:

"It would appear that creditors could withstand the attack under today's opinion simply by making clear in the controlling credit instruments that they may retake possession without a hearing, or, for that matter, without resort to judicial process at all." 407 U.S. at 102, 92 S.Ct. at 2005.

Thus, we find no support for the contention that the State of Pennsylvania has delegated a traditional state function.[24]

We therefore conclude that appellees have failed to show the requisite "state action" necessary to support a claim under 42 U.S.C. § 1983. *Accord,* James v. Pinnix, No. 73–1866, 495 F.2d 206 (5th Cir., filed June 10, 1974); Nichols v. Tower Grove Bank, No. 73–1621, 497 F. 2d 404 (8th Cir., filed May 13, 1974); Nowlin v. Professional Auto Sales, Inc., No. 73–1348 and Mayhugh v. Bill Allen Chevrolet Co., No. 73–1450, 496 F.2d 16 (8th Cir., filed April 25, 1974); Shirley v. State National Bank, No. 73–1783, 493 F.2d 739 (2nd Cir., filed Feb. 14,

---

19. Adams v. Southern California First National Bank, *supra*, 492 F.2d at 337, *citing* 2 F. Pollock & F. Maitland, The History of English Law 574 (2d ed. 1899).

20. The district court relied upon the following language in *Fuentes*:
"The statutes, moreover, abdicate effective state control over *state power*. Private parties, serving their own private advantage, may unilaterally invoke *state power* to replevy goods from another. No state official participates in the decision to seek a writ; no state official reviews the basis for the claim to repossession; and no state official evaluates the need for immediate seizure. There is not even a requirement that the plaintiff provide any information to the court on these matters.

The State acts largely in the dark." 407 U.S. at 93, 92 S.Ct. at 2001. (Emphasis added by district court.)

21. The state statutes in *Fuentes* authorized creditors to initiate replevin procedures by summary writs issued by state courts and executed by state officials.

22. *See* note 20 *supra* and accompanying text.

23. 407 U.S. at 79, 92 S.Ct. at 1993. (emphasis added).

24. *See* James v. Pinnix, No. 73–1866, 495 F. 2d 206 (5th Cir., filed June 10, 1974) (finding self-help repossession to involve no delegation of a state function and distinguishing Hall v. Garson, 430 F.2d 430 (5th Cir. 1970), a decision relied upon by appellees).

1974); Adams v. Southern California First National Bank, 492 F.2d 324 (9th Cir. 1973).[25]

The order of the district court of November 8, 1973 granting the declaratory relief specified in the first sentence of this opinion will be reversed with directions that the district court dismiss appellees' complaint for failure to state a claim under 42 U.S.C. § 1983 upon which relief can be granted.[26]

---

25. Decisions finding no "state action" with respect to similar self-help remedies include: Bickel Optical Lab., Inc. v. Marquette Nat'l Bank, 487 F.2d 906 (8th Cir. 1973); Bond v. Dentzer, No. 73–2377, 494 F.2d 302 (2d Cir., filed March 13, 1974); Fletcher v.

Rhode Island Hosp. Trust Nat'l Bank, 496 F.2d 927 (1st Cir., 1974).

26. *See* Bell v. Hood, 327 U.S. 678, 681–683, 66 S.Ct. 773, 90 L.Ed. 939 (1946); Adams v. Southern California First National Bank, *supra,* 492 F.2d at 338.