Virdie L. SMITH et al.,
Plaintiffs-Appellees,

v.

BROOKSHIRE BROTHERS, INC., et
al., Defendants-Appellants.

No. 74–2606.

United States Court of Appeals,
Fifth Circuit.

Sept. 15, 1975.

Rehearing Denied Oct. 20, 1975.

Kenzy D. Hallmark, Lufkin, Tex., for defendants-appellants.

Jerry L. Hatton, Ernest L. Sample, Beaumont, Tex., for plaintiffs-appellees.

Before GOLDBERG, CLARK and GEE, Circuit Judges.

PER CURIAM:

Virdie L. Smith and Donnie McClure brought an action for damages against Kenneth Sandel, Glen Nevill and Brookshire Brothers, Inc. alleging false imprisonment, malicious prosecution and violation of civil rights protected under 42 U.S.C. § 1983. The suit was prompted by actions taken by employees of Brookshire Brothers to foil those they suspected of being shoplifters. The trial court believed that the plaintiffs had proven their claim and awarded damages. Defendants appeal.

On September 13, 1971 Virdie Smith and Donnie McClure entered Brookshire Brothers of Lufkin, Texas to purchase groceries. Virdie Smith chose a few items. Donnie McClure chose a jar of cold cream and put it in the outside

pocket of her purse. Virdie Smith paid for her groceries on the way out of the store. But "although Donnie McClure was in the vicinity of the checkout counter, she had not passed through the counter and was not in the process of leaving the store when detained by the defendants Sandel and Nevill." (Finding of Fact 7). Sandel and Nevill took both women to the rear of the store and called the police. Policeman Tooley arrived on the scene. The policeman testified that he was not told the manner in which the plaintiffs were apprehended nor does the evidence show him to have known the circumstances which led to the apprehension. He was simply told that they had taken a jar of cold cream. On this basis he took them down to the police station where they were fingerprinted and booked. No written com- plaint was made out at the time the police took McClure and Smith into custody. Rather a store officer went down to the police station some minutes later. At that time he "signed the blank paper that the officer asked me to sign." The charges were ultimately dismissed. The district court found that while McClure's deposit of the jar in her bag during shopping created some cause for suspicion, that fact did not create reasonable grounds to detain the woman as a shoplifter before she had been given an opportunity to pay for the item. The court also found that the appellants had acted under color of state law in bringing about the detention of appellees and had thus violated their civil rights within the purview of § 1983. He awarded each $6,000.00.

In sum, the police had detained the appellees without independently establishing that there was probable cause to do so—they took the appellees into custody without a valid complaint having been filed and without knowing the facts to believe that a crime had been committed. *See United States v. Salvo,* 5 Cir. 1971, 447 F.2d 474; *United States v. Lipscomb,* 5 Cir. 1970, 435 F.2d 795. Instead, they depended on the conclusory assessment of the store officers. These store managers, in turn, did not have probable cause for believing that McClure was a shoplifter and that Smith was an accomplice.

But in order for the defendant- appellant Brookshire to be liable under § 1983 for fostering a detention without probable cause, the plaintiffs must show that Brookshire was acting under color of law. The police may have made a mistake but they are not defendants here. The store managers may have made a mistake in detaining appellees but that alone would not make them liable under § 1983; it would only create a state tort action, depending on the state's false imprisonment standard. The plaintiffs had to show that the police and the store managers were acting in concert; that Brookshire and the police had a customary plan whose result was the detention in the present case. *Adickes v. Kress & Co.,* 1970, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142.

The district court decided that such a plan had been evidenced: "The arrests by the Police Department of the City of Lufkin were made without the filing of a valid complaint and without any investigation, *all of which was pursuant to said preconceived plan.*" (Finding of Fact 4; emphasis added). We do not believe that such a finding is clearly erroneous. Many colloquies at trial gave testimony to the proposition that Brookshire officials knew that they could have people detained merely by calling the police and designating the detainee. Illustrative of the evidence are the following exchanges:

1.

Q: Does Brookshire, to your knowledge, have any type of pre-arranged plan with the Lufkin Police Department to come and assist them when they need help, particularly in the area of shoplifting?

A: (Officer Tooley): Yes, sir, at that time they did.

2.

Q: And shoplifting was part of your job when merchants would call in that

they had caught somebody, they would call the police department and you would go out and pick them up?

A: (Officer Tooley): Yes, sir.

Q: Is this a pre-arranged plan you are talking about, they didn't bring them in theirselves, they would call you and you would come get them?

A: Yes, sir.

3.

Q: What led you to file a complaint on Mrs. Smith?

A: (Mr. Sandell): Well, there had been previous cases that I asked the officer about that was similar to this here when maybe one assisted in helping another one or watched for them and so forth, and the officer always said to file on both of them if they were helping like this, and after talking with her also.

■ We believe that the district court was not clearly erroneous in his finding from such evidence that a plan existed which made the defendant-appellant an actor under color of law and thus liable for damages under 42 U.S.C. § 1983.

Affirmed.

GEE, Circuit Judge (dissenting):

Affirming, the majority properly finds it unnecessary to discuss one of appellants' major contentions or to detail the facts at much length. Dissenting, I cannot avoid doing both.

On September 13, 1971, after two earlier shopping stops, Virdie Smith and Donnie McClure entered Brookshire Brothers of Lufkin, Texas, to purchase groceries. Virdie Smith chose a few items, put them in her shopping cart, and, she said, began to search for the large-size Milky Ways. Donnie McClure had accompanied her sister into the store. Sandel and Nevill, both employees of Brookshire Brothers, believed the women were acting strangely and decided to go to the observation post at the back of the store where they could watch all the aisles without being seen. There is no question that Virdie Smith had paid for her groceries on her way out of the store. The court found that she had done nothing more "suspicious" while in the store than glance around. Donnie McClure's actions, however, were in dispute. Appellants claimed that McClure had gone through the checkout line without paying for a jar of Pond's cold cream. The court agreed that there was some cause for suspicion due to the fact that she had placed the jar of cold cream in the outside pocket[1] of her purse while passing through the aisles of Brookshire Brothers; however, he also found that she had not been given an opportunity to pay, so there were no reasonable grounds to believe that she was a shoplifter. Reasonable grounds or no, Sandel and Nevill, evidently convinced that they were about to successfully disrupt a plot between shoplifter and accomplice to filch a jar of cold cream, stopped the women before they left the store and took them to the rear of the store. McClure produced the cold cream, but both women disclaimed intent to deprive the store of any goods without paying for them. Nevertheless, the police were called. Policeman Tooley arrived on the scene; Nevill and Sandel pointed out the alleged wrongdoers; and Tooley took them to police headquarters where they were fingerprinted and booked. The court found that Tooley had made no independent investigation of the facts before taking the women in. No complaint had been filed when the women were removed from Brookshire's; Sandel later came to the station and signed a complaint form. The charges were ultimately dismissed. The court below found that appellants had acted under color of state law in violating the women's civil rights and awarded each $6,000.

Appellants' first attack is on the threshold requirement of the suit. In order to recover under § 1983, the plaintiff must establish both deprivation of a right secured by the federal Constitution or laws and action by defendant under color of state law. *Adickes v. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26

1. Appellants claim inside.

L.Ed.2d 142 (1970). Appellants here are private citizens, and they contend that their actions were private as well. If so, then Smith and McClure fail on both essentials of their suit: no action under color of law and no right protected by the Fourteenth Amendment since that amendment protects against state action only. *Hall v. Garson,* 430 F.2d 430, 439 (5th Cir. 1970). However, in some circumstances private citizens can be found liable under § 1983. The court below did not designate specifically the reasons for finding that defendants had acted under color of state law, but appellees suggest two possibilities: delegation of state functions and joint activity with state officials.

Here Sandel and Nevill were acting pursuant to now-repealed Article 1436e of the Texas Penal Code. That section provides that a merchant with reasonable grounds to believe a person has taken his goods wrongfully may, if done in a reasonable manner, detain the person to investigate ownership of the goods. Any person can seize goods to prevent shoplifting and bring the goods and, if possible, the offender before a magistrate, or deliver same to a peace officer for that purpose. Again, reasonable grounds are required.[2] *Hall v. Garson, supra,* appears on its surface to compel the conclusion that this statutory authorization is sufficient indication of state action. In *Hall,* we found state action when a landlord acted pursuant to state statute granting him a lien on personal property in a tenant's apartment to the extent of past-due unpaid rent and au-

thorizing his peremptory seizure of that personal property without notice or prior resort to judicial proceedings. Entry into another's home and seizure of personal property possessed "many, if not all, of the characteristics of an act of the State." Execution of a lien was historically a state function, performed by the sheriff. By allowing the landlord to perform the function, the state had clothed him with such authority that his actions became state action. Appellees seek to come within the *Hall* rationale by pointing to the detention aspects of the statute and analogizing them to arrest, a function performed by state peace officers. The argument is not without appeal but ignores more recent decisions of this circuit rejecting application of *Hall* in cases involving state self-help repossession statutes. *James v. Pinnix,* 495 F.2d 206 (5th Cir. 1974); *Brantley v. Union Bank & Trust Co.,* 498 F.2d 365 (5th Cir.), *cert. denied,* 419 U.S. 1034, 95 S.Ct. 517, 42 L.Ed.2d 309 (1974); *Calderon v. United Furniture Co.,* 505 F.2d 950 (5th Cir. 1974). Contrary to the roving authorization to take property unrelated to debt in *Hall,* the statutes in issue allowed repossession *only* of the item in which the creditor had a purchase money security interest. This rendered analogy to a sheriff's seizing property to satisfy a judgment more remote. Also, the action was of the sort long taken by private citizens. And in *Calderon,* the court refused to deviate from precedent even though there had been an entry onto private property, absence of which the court thought significant in *James.* These cases, buttressed by the analysis

---

**2. Prevention of consequences of shoplifting**

Sec. 2. All persons have a right to prevent the consequences of shoplifting by seizing any goods, edible meat or other corporeal property which has been so taken, and bringing it, with the supposed offender, if he can be taken, before a magistrate for examination, or delivering the same to a peace officer for that purpose. To justify such a seizure, there must, however, be reasonable ground to suppose the crime of shoplifting to have been committed and the property so taken, and the seizure must be openly made and the proceeding had without delay.

**Detention of persons**

Sec. 3. Any merchant, his agent or employee, who has reasonable ground to believe that a person has wrongfully taken or has wrongful possession of merchandise, may detain such person in a reasonable manner and for a reasonable length of time for the purpose of investigating the ownership of such merchandise. Such reasonable detention shall not constitute an arrest nor shall it render the merchant, his agent or employee, liable to the person detained.

used in a recent Supreme Court decision, *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), in which the Supreme Court failed to find state action in state regulation of a private utility company, lead me to conclude the action here was private.

Like defendants in *James, Brantley* and *Calderon,* Sandel and Nevill acted to recover only the particular property they believed still belonged to Brookshire Brothers, property in which the store had a well-defined personal interest. Unlike state police officers who have a continuing duty to arrest lawbreakers of all kinds, merchants are burdened with no duty under Article 1436e. Self interest, not broad public interest, is their guide to action. *Warren v. Cummings,* 303 F.Supp. 803 (D.Colo.1969) (shoplifting statute); *Weyandt v. Mason's Stores, Inc.,* 279 F.Supp. 283, 286–87 (W.D.Pa. 1968) (shoplifting statute). The Texas statute merely codifies that limited self-help privilege in an owner to protect his property which has been recognized as a defense in tort suits. Prosser, Law of Torts § 22 (3d ed. 1964) [citing *Burnaman v. J. C. Penney Co.,* 181 F.Supp. 633 (S.D.Tex.1960), a case dealing with a similar Texas statute].

Whatever approach we might take were this a case involving racial discrimination, our task here, as noted in other state-action cases untouched by racial overtones, is to weigh carefully all factors and apply as precisely as we are able the state-action doctrine. *See Greco v. Orange Memorial Hospital Corp.,* 513 F.2d 873 (5th Cir. 1975); *James v. Pinnix, supra,* at 209. Having done so, I would conclude that the statute does not clothe the merchant with sufficient indicia of state function to make his action state action.

Alternatively, the appellees point to the concerted actions of private individuals and public officials which can in some circumstances constitute state action. *See United States v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); *Adickes v. Kress & Co., supra.*

Pertinent to this issue, the trial court found that company officials had devised a plan to confine shoplifters in the store while police were called to make the arrest. Further, the police then arrested those held without prior filing of a complaint or investigation "all of which was pursuant to said preconceived plan." More than 300 persons were apprehended over a period of several months.

I think the trial court's finding, affirmed by the majority, was clearly erroneous. The testimony does show that Brookshire Brothers had devised a plan to catch shoplifters. That plan was permitted under Article 1436e, which I think for the reasons stated above was insufficient to show state action, and was doubtless a reasonable measure in the face of serious losses from shoplifting. The police, as is their duty, responded to reports of lawbreaking. On the evidence, this is the "pre-arranged plan." There is nothing in the record to show that the police were influenced in their choice of procedures by Sandel or Nevill as implied by the trial court's finding or that they had any control over what procedures the police followed. I do not think that the fact that the police picked up many shoplifters detained by Brookshire Brothers changes the result; there is still nothing to show that the police proceeded according to the wishes of Brookshire Brothers, or any other merchant, or that they would have acted differently in response to reports of other sorts of crimes. The vision of a citizen's hesitating to call for police assistance in fear they may, when they arrive, employ some unconstitutional procedure over which he has no control and thus render him liable in a § 1983 action is not an attractive one. I would decline to give it form. A procedure unilaterally devised by the police to take shoplifters into custody if called on amounts to no more than what police do always and everywhere and does not suffice to show state action in this suit against private parties under § 1983.

The record passages cited by the majority amount to no more than mild

four-finger exercises by the examiner in putting words into witnesses' mouths[3] and, being the best evidence that the record offers to support the finding of a preconceived plan to deprive plaintiffs of their constitutional rights, reveal with eloquence the want of proof of such a thing. The first two establish that there was indeed a "plan." The plan was, as I have noted above, that when a merchant caught a shoplifter (or thought he had), he would call the police to come out rather than taking him down to the station himself. The third and last passage is merely Sandel's explanation of why he filed a complaint against both women rather than Ms. McClure alone. Reading them over, I am able to see the plate all right, but the ghost escapes me.[4]

I would reverse.[5]

3. Ironically, in one of the passages quoted the examiner is the defendants' attorney, who is trying to explain through the witness' mouth that the "preconceived plan" to which he has already admitted is nothing more than one to call the police when a shoplifter is caught.

4. [T]he government brought and testified to its case with no more real support in the evidence for a finding of guilt than there was for the finding that a ghost had been seen in the story of the man who said, "My friend saw a ghost eating off a plate at his house last night, and if you don't believe it, here is the plate he says he saw the ghost eating from." Hutcheson, C. J., writing for the court in *Panci v. United States,* 256 F.2d 308, at 312 (5th Cir. 1958).

5. Diversity was alleged below; however, it is clear that complete diversity was lacking. Likewise, plaintiffs failed to show a violation of § 1985.