503 F.2d 990
 Curtis A. PHILLIPS and Rosa Mary Phillips, Individually and
on behalf of all other persons similarly situated,
Plaintiffs-Appellants,
v.
Dan MONEY, d/b/a Dan Money's Standard Service Center,
Individually and asrepresentative of all garagemen
of the State of Indiana, Defendant-Appellee.
 No. 72-1772.
 United States Court of Appeals, Seventh Circuit.
 Argued June 13, 1973.
Decided Sept. 13, 1974.
 
 Russell E. Lovell, II, David S. Walker, Indianapolis, Ind., for plaintiffs-appellants.
 Theodore L. Sendak, Atty. Gen., David L. Foutty, Indianapolis, Ind., for defendant-appellee.
 Before FAIRCHILD and SPRECHER, Circuit Judges, and CRANT, District judge.*
 FAIRCHILD, Circuit Judge.
 
 
 1
 Plaintiffs Phillips are the owners of an automobile, detained by defendant Money, who claimed a lien for his services. Plaintiffs brought action for damages and injunctive relief under 42 U.S.C. 1983, claiming that certain lien laws of Indiana deny due process and are unconstitutional. Plaintiffs sought to maintain the action as a class action and to add as defendants the state of Indiana and the governor. The district court dismissed the action, on motion of the defendants, without prejudice. Plaintiffs appealed.
 
 
 2
 Summarizing the facts as they appear from the complaint, Mr. Phillips took his car to defendant Money's service station for repair. Repair work was done, but after the car was returned to Phillips, further trouble developed. Defendant Money examined the car and estimated the cost of further repairs at $50. Phillips authorized Money to proceed, but Money later advised that additional repair, costing $150, was found necessary. Phillips declined to proceed further. Money refused to return the car unless he was paid $50 for evaluation of the problem. Plaintiffs claim that the further work was made necessary by Money's negligence in performing the initial work.
 
 
 3
 Plaintiffs claim that certain Indiana statutes 'encouraged and authorized' Money to detain plaintiffs' automobile. Therefore, they claim that Money, though in business for himself, was acting under color of state law for the purpose of 1983 in detaining the automobile, and was depriving plaintiffs of the use of their property without due process of law, since they were not afforded notice and hearing at which the disputes about the legitimacy of the charge could be resolved.
 
 
 4
 The district court held that so far as the complaint showed, defendant Money was proceeding under his common law lien and there were no averments to show that defendant had taken any steps toward utilizing the provisions of the statutes which plaintiffs attack. The order appealed from was entered July 11, 1972.
 
 
 5
 The parties have informed us of certain subsequent events. On July 19, Money filed in state court a complaint seeking foreclosure of a common law lien. In late August, Money closed his shop, leaving the automobile on the premises, and plaintiffs had their automobile towed to their residence. Plaintiffs regained possession, and will suffer no adverse result in the state court foreclosure action without an opportunity to be heard. But for plaintiffs' claim for damages during the detention, this case would appear to be moot.
 
 
 6
 Statutes Involved.
 
 
 7
 Under Burns Indiana Statutes Annotated, Code Edition, 9-9-5-6 (47-552), which has been held to declare the common law, and provide additional remedies,[1] every person who shall do any repair work on a motor vehicle, at the request of the owner, is given a lien thereon to the reasonable value of the charges. In the event the charges are not paid within thirty days, the lienholder may advertise and sell the vehicle, after notice by registered mail to the owner, and retain the amount of the lien and costs, paying the overplus to the owner or into court. On presentation of the lienholder's certificate setting forth the facts, the secretary of state shall issue a new certificate of title to the purchaser.
 
 
 8
 Under 32-8-31-1 (43-807) every person engaged in repairing motor vehicles shall have a lien on any motor vehicle repaired or serviced for his reasonable charges. Under 32-8-31-3 (43-809) a person seeking to acquire such lien shall file notice in the county recorder's office within sixty days after performance of the work. Under 32-8-31-5 (43-811), such lien may be foreclosed by civil action. The complaint shall be filed within one year from the recording of the notice.
 
 
 9
 In addition, Indiana common law provides a lien. Grusin, supra, n. 1.
 
 
 10
 Neither statute, nor, of course, the common law, requires that the repairman before retaining the motor vehicle pursuant to his lien, or otherwise acting to affect the owner's interest, must give notice of a hearing and there make a convincing showing of the facts entitling the repairman to such lien.
 
 
 11
 Although the owner may seek a resolution of a dispute over the facts on which the lien is predicated through replevin, or otherwise, the burden of going forward is placed upon him, and the filing of a bond is necessary in order to regain immediate possession. See Town of Andrews v. Sellers, 11 Ind.App. 301, 38 N.E. 1101, 1102 (1894); 34-1-9-8, Burns Indiana Statutes Annotated, Code Edition, and 34-1-9.1-6, added by Acts 1973, P.L. 317.
 
 
 12
 Plaintiffs urge that the Indiana statutes and common law, sanctioning the summary detention of a customer's vehicle until he pays the repair bill (or the transfer of title pursuant to advertised sale, although that did not happen here) deprive the customer of property without procedural due process in violation of the Fourteenth Amendment.
 
 
 13
 The critical issue is whether the action of defendant Money, as alleged in the complaint, fulfills the concept of 'state action' under the Fourteenth Amendment and the corresponding concept, under 42 U.S.C. 1983, of action 'under color of any statute . . . custom, or usage, of any State.'[2]
 
 
 14
 Recognizing that it is not always easy to determine whether particular conduct is 'private,' we conclude that detention pursuant to a common law or statutory mechanic's lien by a private individual in possession of the motor vehicle does not constitute 'state action' within the meaning of the Fourteenth Amendment.[3] In Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 173, 92 S.Ct. 1965, 1971, 32 L.Ed.2d 627 (1972), the Supreme Court stated (with respect to whether there was state action for the purpose of the equal protection clause) 'where the impetus for the discrimination is private, the State must have 'significantly involved itself with invidious discriminations,' . . . in order for the discriminatory action to fall within the ambit of the constitutional prohibition.'
 
 
 15
 At the outset, before evaluating the degree of the state's involvement here, it is useful to note what circumstances are not before us. It is clear that Indiana law[4] does not compel the private mechanic to retain the owner's automobile. See e.g., Moose Lodge, supra; Adickes v. Kress & Co., 398 U.S. 144, 169, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Nor is the situation comparable to that considered in Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948) where judicial action to enforce racially restrictive covenants was deemed state action and therefore in violation of the Fourteenth Amendment. Nor is there such symbiotic relationship between the state and the private party as in Burton v. Wilmington Parking Authority, 365 U.S. 715, 725, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). Nor is the retention accomplished by the mechanic's willful participation in joint activity with the State or its agents. United States v. Price, 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); United States v. Guest, 383 U.S. 745, 756, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966).
 
 
 16
 Nor is the detention effectuated with ministerial participation by state officials as in Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) and Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) reh. denied 409 U.S. 902, 93 S.Ct. 177, 34 L.Ed.2d 165, where the Supreme Court invalidated prejudgment garnishment and replevin remedies because they worked a deprivation of property without due process of law. In Fuentes, the challenged statutes provided for the issuance of writs of replevin by clerks of courts authorizing state officials to seize goods or chattels from the possessor. In Sniadach the clerk of court issued a summons at the request of the creditor, which, when served on the employer garnishee by the creditor, froze the wages of the alleged debtor defendant. Although the language in those two cases does not expressly confine the application of Fourteenth Amendment procedural due process requirements to seizures by state agents or creditors armed with judicial writs, it is clear that the Supreme Court has not yet addressed the question of whether some less direct form of state involvement would suffice. See Bond v. Dentzer, 494 F.2d 302 (2d Cir. 1974).
 
 
 17
 Furthermore, we do not think the detention can be characterized as 'state action' on the theory that the state has delegated an essentially public or governmental function to the mechanic or that the mechanic in detaining the automobile acts as an alter ego of a state agent with the semblance of state authority. Courts have disagreed as to the persuasiveness of this argument in the context of constitutional challenges to the self-help repossession section of the Uniform Commercial Code (9-503), to statutes creating landlord's liens, and to public utility cutoffs. Whenever 'state action' has been found on this 'delegation of state function' theory, the creditor has actively seized the property, has entered the dwelling of the debtor, or has been pervasively regulated by the state.[5] Plaintiffs' argument that the mechanic's refusal to redeliver, without payment of his claimed charges, an automobile voluntarily placed in his possession[6] constitutes a subrosa exercise of the state's police power is far less persuasive. See Clark and Landers, Sniadach, Fuentes and Beyond-- The Creditor Meets the Constitution, 59 Va.L.Rev. 389 (1973).
 
 
 18
 Nevertheless, plaintiffs insist that the state of Indiana has inextricably entwined itself in the creditor's private activity and that despite its ostensible neutrality, the state in fact encourages the deprivation of property without procedural due process. Specifically plaintiffs argue, quoting Lucas v. Wisconsin Electric Power Company, 466 F.2d 638, 655 (7th Cir. 1972), cert. denied, 409 U.S. 1114, 93 S.Ct. 928, 34 L.Ed.2d 696, that the Indiana statutory and common law scheme affirmatively supports the garageman's action by insulating him from criminal and civil liability for withholding possession from the owner, and that, accordingly, the private party 'derives some 'aid, comfort, or incentive,' either real or apparent, from the state.'Burton v. Wilmington Parking Authority, supra, 365 U.S. at 722, 81 S.Ct. 856, indicates that the question is to be resolved by a balancing process, 'sifting facts and weighing circumstances.' Following that process we conclude that the enactment of statutes or recognition of the common law (permitting retention of possession by a garageman for claimed unpaid charges) is not to be deemed affirmative support such that 'state action' occurs, and the state merely establishes the legal context in which individuals conduct their private affairs.[7] The Supreme Court has not held that action by an otherwise private entity amounts to state action 'if the private entity receives any sort of benefit or service at all from the State, or if it is subject to state regulation in any degree whatever.' Moose Lodge, supra, 407 U.S. at 173, 92 S.Ct. at 1971.[8] Accordingly, we conclude that the defendant Money did not act under color of state law and that the state action necessary to invoke the Fourteenth Amendment due process clause is absent.
 
 
 19
 Furthermore, we think that even assuming state action to be present, the instant case is distinguishable from Fuentes. In Fuentes the three dissenting justices suggested that antagonistic but valuable property interests of both creditor-seller and debtor-purchaser in the goods should be compared and weighed. Fuentes, 407 U.S. 67, 99-100, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1971), White, J., joined by Burger, C.J., and Blackmun, J., dissenting.
 
 
 20
 Although this approach was not adopted in the majority opinion in Fuentes, five of the Justices in the recent case of Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) indicated that the real interests of both creditor and debtor in the contested property must be taken into account in determining what procedures are constitutionally sufficient. Following this analysis, the critical factual difference between the case before us and both Fuentes and Mitchell becomes apparent. in Fuentes, as noted by the majority, the creditor-seller had only bare legal title to the goods under the conditional sales contract; possession was in the debtor-purchaser. Similarly the vendor in Mitchell was without possession of the goods although state law created a vendor's lien to secure the unpaid balance of the purchase price. Accordingly, in order for the creditor-seller to obtain possession in Fuentes or for the state court constable to sequester the merchandise in Mitchell, a seizure of goods from the debtor altering the status quo pending final judgment on the merits was necessary. In contrast here the voluntary surrender of the motor vehicle to the garageman, albeit for the limited purpose of performing authorized repairs, results in the garageman having both a legal property interest, in the form of a lien, and actual possession. Interference with the status quo would be necessary to enable the owner to regain possession prior to final judgment. Under these circumstances we cannot conclude that the Indiana procedure, permitting the repairman to retain possession and imposing on the car owner the burden of initiating litigation to challenge his right and resolve the disputes is fundamentally unfair. See Hernandez v. European Auto Collision, Inc., 346 F.Supp. 313, 318-319 (E.D.N.Y. 1972), rev'd 487 F.2d 378 (2d Cir. 1973); Adams v. Dept. of Motor Vehicles, supra.
 
 
 21
 The district court's judgment is affirmed.
 
 
 
 *
 Honorable Robert A. Grant, Senior Judge of the Northern District of Indiana, is sitting by designation
 
 
 [1]
 Grusin v. Stutz Motor Car Co., 206 Ind. 266, 187 N.E. 382 (1933)
 
 
 [2]
 The defendant does not claim that the deprivation of the use of the automobile for over a month and a half is not a deprivation of property sufficient to be within the meaning of the Fourteenth Amendment. See Fuentes v. Shevin, 407 U.S. 67, 84, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)
 
 
 [3]
 We need not and do not consider whether a transfer of title upon statutory sale would be such state action
 
 
 [4]
 We do not think it necessary to determine whether the retention was pursuant to common law or legislative enactment. It would be difficult to justify a difference in conclusion on that basis. See Palmer v. Columbia Gas of Ohio, Inc., 479 F.2d 153, 163 (6th Cir. 1973)
 
 
 [5]
 E.g., Palmer v. Columbia Gas of Ohio, Inc., supra, n. 4 (utility cut-off); Hall v. Garson, 430 F.2d 430 (5th Cir. 1970) (landlord's lien); Boland v. Essex County Bank and Trust Company, 361 F.Supp. 917 (D.Mass.1973) (self-help repossession); Gibbs v. Titelman, 369 F.Supp. 38 (E.D.Pa.1973) (self-help repossession); Hernandez v. European Auto Collision, Inc., 487 F.2d 378 (2d Cir. 1973) (sale of automobile retained under garageman's lien)
 
 
 [6]
 See Adams v. Dept. of Motor Vehicles, 11 Cal.3d 146, 113 Cal.Rptr. 145, 520 P.2d 961, 1974, where the Supreme Court of California, although finding state action, decided that provisions for retention by the garageman lien claimant do not violate due process, but provisions for sale without notice do. We do not reach the sale provisions of the Indiana statute in this case
 
 
 [7]
 Cf. Shirley v. State National Bank of Connecticur, 493 F.2d 739 (2d Cir. 1974); Adams v. Southern California First National Bank, 492 F.2d 324 (9th Cir. 1974); Bichel Optical Lab., Inc. v. Marquette Nat. Bk. of Mpls., 487 F.2d 906 (8th Cir. 1973); Johnson v. Associates Finance, Inc., 365 F.Supp. 1380 (S.D.Ill.1973); Kirksey v. Theilig, 351 F.Supp. 727 (D.Colo.1972); Oller v. Bank of America, 342 F.Supp. 21 (N.D.Cal.1972). But see Gibbs v. Titelman, supra, n. 5; Straley v. Gassaway Motor Company, Inc., 359 F.Supp. 902 (S.D.W.Va. 1973); Klim v. Jones, 315 F.Supp. 109 (N.D.Cal.1970). Some of the cases earlier above cited hold that self-help repossession under U.C.C. 9-503 does not constitute state action and lend support by analogy to our conclusion not constitute state action under the 'entwinement' theory. We emphasize that by citation of the authority we express no opinion as to whether the 'delegation of state function' theory of state action is persuasive in cases arising under the U.C.C. See e.g., Boland v. Essex County Bank and Trust Company, supra, n. 5
 
 
 [8]
 Presumably the exercise by a party of a right to self-help given him by contract is not state action, even though the state courts will respect and implement the right if called upon. Arguably the same is true where the state law provides that such right shall be implied in a particular type of contract unless the parties agree otherwise. We do not find it necessary to reject this analysis, based on consent, although we recognize there are decisions to the contrary, and that views may differ with respect to the fairness of such an arrangement, or imbalance between the parties thereto