Gilbert **PARKS** et al.

v.

**"Mr. FORD"** d/b/a Ford's
Speed Shop et al.

William **MULDOWNEY, Jr.**

v.

**INTERNATIONAL CYCLES, INC.**

Civ. A. Nos. 72–639, 73–1699.

United States District Court,
E. D. Pennsylvania.

July 28, 1975.

David A. Scholl, Chester, Pa., for plaintiff.

Thomas E. Waters, Jr., Andrew E. Wakshul, Norristown, Pa., for defendant North Penn Motors.

## OPINION AND ORDER

FOGEL, District Judge.

Plaintiffs in these consolidated actions challenge the retention and sale elements of the "repairmen's lien" created by the common law and statutes of the Commonwealth of Pennsylvania. In a prior Opinion and Order dated December 11, 1974, we upheld the "repairmen's lien" on the dual grounds that plaintiffs had failed to show sufficient state involvement in the conduct of the private defendants to constitute: (1) state action within the meaning of the Fourteenth Amendment, or (2) acts under color of state law within the meaning of 42 U.S. C. § 1983. Summary judgment was entered in favor of defendants on January 10, 1975.[1] An extensive recitation of the facts in these actions, and the bases for our legal conclusions, may be found in the Opinion and Order of December 11, 1974, and in the Supplemental Opinion and Order of January 10, 1975, both of which are reported at 386 F.Supp. 1251.

At a subsequent conference held on January 7, 1975, counsel for plaintiffs notified the Court and opposing counsel

---

1. The summary judgment was entered on the Clerk's Docket the same day it was signed. See Rules 58 and 79(a), F.R.Civ.P.

of their intention to file post-judgment motions, as soon as judgment was entered in accordance with the Opinion and Order of December 11, 1974. Confirmation of that position was evidenced by a letter addressed to the Court, with copies noted to opposing counsel, under date of January 8, 1975. On January 17, 1975, counsel for plaintiffs deposited into the mail, (first class, postage prepaid), copies of their post-judgment motions, which were submitted pursuant to the provisions of Rules 52(b), 59(a), 59(c), and 59(e) of the Federal Rules of Civil Procedure, under which they seek to have us vacate, alter, or amend the judgment we previously entered. These motions were not filed, however, until January 27, 1975.

We are thus confronted with two critical issues in ruling upon these motions: *First:* whether they (a) were timely filed, and (b) adequately met the procedural standards mandated both by the case law and the relevant Federal Rules, and *Second:* whether plaintiffs are entitled to the relief which they seek on the merits.

We conclude that there are no procedural obstacles to consideration of plaintiffs' motions, but that relief on the merits should be denied.

I. *Timeliness of the Filing of the Motions and Compliance with Requisite Procedural Standards.*

We have concluded that plaintiffs' motions were timely and properly filed under Rule 59(e) of the Federal Rules of Civil Procedure.[2]

Initially, we are satisfied that plaintiffs have complied with the time limitation of Rule 59(e), even though they did not file their motions with the Clerk of

this Court until January 27, 1975, seventeen days after the entry of judgment.

Rule 59(e) provides as follows:

*Motion to Alter or Amend a Judgment.* A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.

■ The law is clear that the ten day requirement of Rule 59(e) *is mandatory* and may not be extended by the trial court, Rule 6(b), (F.R.Civ.P.), see *Steward v. Atlantic Refining Company*, 235 F.2d 570, 571–572 (3d Cir. 1956), notwithstanding an agreement of the parties to enlarge this period, *Nugent v. Yellow Cab Company*, 295 F.2d 794, 795–796 (7th Cir. 1961), cert. den. 369 U.S. 828, 82 S.Ct. 844, 7 L.Ed.2d 793. However, the rule merely requires that the motion be *served, rather than filed of record, within ten days*, provided that it is filed within a reasonable time after it is served, Rule 5(d), (F.R.Civ.P.), *Keohane v. Swarco, Inc.*, 320 F.2d 429, 430–432 (6th Cir. 1963). Rule 5(b) provides that service may be made upon counsel for a party by mail, and further specifies that such service is complete upon mailing, see *Stover v. Universal Moulded Products Corporation*, 11 F.R. D. 90, 91 (E.D.Pa.1950).

■ In the instant case, entry of judgment occurred on January 10, 1975. Plaintiffs mailed copies of their motions to opposing counsel on January 17, 1975, and attached thereto a certificate of service consisting of the following:

I hereby certify that a true and correct copy of the within Plaintiffs' Motion to Vacate or Alter or Amend Opinion and Final Order and Judgment, with an accompanying Memo-

---

**2.** Plaintiffs have also purported to bring their motions pursuant to Rules 52(b), 59(a) and 59(c). None of these rules can be properly invoked, given the present posture of this matter. Rule 52(b) deals with amendment of findings of fact made in conformity with Rule 52(a). In the instant case, in which summary judgment was entered for defendants, findings of fact were neither required nor appropriate. Similarly, Rules 59(a) and 59(c) deal with motions for new trials. No trial was held in the instant case, and thus these rules are inapposite.

randum of Law has been served upon all parties or their counsel as set forth in the said Notice of Motions, by mailing copies first-class postage prepaid, to all of said counsel on January 17, 1975.

I further certify that all parties required to be served have been served.

/s/ David A. Scholl
[Attorney for Plaintiffs]

Service of these motions was thus complete on January 17, 1975, the date upon which they were mailed, *Stover v. Universal Moulded Products Corporation, supra,* 11 F.R.D. at 91, and service of the motions, accordingly, complied with the ten-day limitation period mandated by Rule 59(e), *Keohane v. Swarco, Inc.,* 320 F.2d at 430–432.[3]

Thereafter, these motions were filed with the Clerk on January 27, 1975; counsel apparently did so on the basis of the erroneous understanding that Local Rule 36 of this Court requires a ten-day hiatus between service and actual filing, rather than the five day period called for under the provisions of that rule. Such a delay of ten days, however, is certainly a reasonable one within the meaning of Rule 5(d), see *Keohane v. Swarco, Inc., supra,* 320 F.2d at 430–431.

The next question is whether plaintiffs have properly raised the matters they seek to have us adjudicate by a Rule 59(e) motion, in light of the relief they are seeking.

In essence, they are utilizing that rule in order to achieve the following results: (1) vacation, alteration, or amendment of the judgment entered in favor of defendants on January 10, 1975; in effect, through the medium of this motion, plaintiffs are rearguing their prior contentions, in which they sought partial summary adjudication; in sum, we are asked to reverse our previous decision against them; (2) leave to amend the complaint to add Frank X. Garber, Director of the Bureau of Motor Vehicles of the Pennsylvania Department of Transportation, as an additional named defendant.[4]

■■ There can be no doubt that a motion under Rule 59(e) is the proper procedural vehicle to use when a party seeks to vacate, alter, or amend a summary judgment, even though there has not been a trial of the matter, *Sonnenblick v. Goldman Corp., supra,* 420 F.2d at 858–859, *Tucker v. Reading Co.,* 335 F.Supp. 1269, 1270 (E.D.Pa.1971).[5]

---

3. The instant case is thus distinguishable from *Sonnenblick-Goldman Corp. v. Nowalk,* 420 F.2d 858, 859–860 (3d Cir. 1970), in which the Court of Appeals for the Third Circuit concluded that the following certificate of service was inadequate to establish that the requisite service had been made within the ten-day period of Rule 59(e):

"I hereby certify that a copy has been sent to plaintiff's counsel Lesher.

[Sgd.] Richard Jewell
11/13/68"

The Court found that the only fair inference which could be drawn from such a certificate was that service was made on November 13, 1968, one day after the Rule 59(e) period had expired. Further, the parties had agreed that service was not made on or before November 12, 1968.

In the case at bar, the certificate specifically sets forth the date upon which mailing took place. This representation has not been challenged by defendants.

4. Plaintiffs also seek to enlarge the record in this case to include the affidavits of Mr. Garber, and one Richard Walker. We need not specifically rule upon this request, since those affidavits have been attached to plaintiffs' motions for post-judgment relief, which, of course, were filed of record in this case. We have considered them in ruling upon the instant motions, and, therefore, to that extent, they will be part of the record transmitted to the Court of Appeals, should plaintiff *seek appellate review* in this matter.

5. Rule 59(e) by its terms deals with alteration or amendment of judgments, but does not specifically provide for vacation of a judgment. There is some authority, therefore, for the proposition that a motion which seeks vacation of a summary judgment, based solely upon a request for reconsideration of the issues by the Court, is not properly within Rule 59(e), but must instead

Moreover, a motion under Rule 59(e) may be used to vacate the judgment, and thereafter as a device to seek leave to amend the complaint, see *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L. Ed.2d 222 (1962), *Ginsburg v. Stern*, 242 F.2d 379, 380 (3d Cir. 1957) (Rule 60(b)), *Kelly v. Delaware River Joint Commission*, 187 F.2d 93, 94–95 (3d Cir. 1951).

■ Accordingly, we are satisfied that plaintiffs' motions under Rule 59(e) were timely filed, and are procedurally adequate to raise the issues they ask us to review. We therefore turn to the merits of these motions.

## II. *The Merits.*

We deal first with plaintiffs' request for reconsideration of the issues initially presented in their motion for partial summary adjudication. As noted, plaintiffs seek vacation of the summary judgment entered in favor of defendants, and ask that we reverse that decision and enter summary judgment in their favor.

In support of this request for reconsideration, plaintiffs have filed an extensive brief contra the conclusions reached by the Court in its Opinion and Order of December 11, 1974. We have reviewed plaintiffs' arguments at length, and while there is certainly some authority in their favor, as we noted in the previous Opinion, 386 F.Supp. at 1262, we adhere to our conviction that the principles that underpinned the decisions they cite have been toppled by a

series of recent rulings of various Courts of Appeals which have refused to find state action in cases involving private automobile repossession which has been undertaken pursuant to provisions of the Uniform Commercial Code and similar state statutes. See e. g. *Gibbs v. Titelman*, 502 F.2d 1107 (3d Cir. 1974); *Shirley v. State National Bank of Connecticut*, 493 F.2d 739 (2d Cir. 1974), cert. den. 419 U.S. 1009, 95 S.Ct. 329, 42 L.Ed.2d 284 (1974); *James v. Pinnix*, 495 F.2d 206 (5th Cir. 1974); *Turner v. Impala Motors*, 503 F.2d 607 (6th Cir. 1974); *Nichols v. Tower Grove Bank*, 497 F.2d 404 (8th Cir. 1974); *Adams v. Southern California First National Bank*, 492 F.2d 324 (9th Cir. 1973), cert. den. 419 U.S. 1006, 95 S.Ct. 325, 42 L.Ed.2d 282 (1974).

Plaintiffs have directed our attention to two recent District Court decisions, not discussed in our previous Opinion, in support of their contention that state action is present under the facts of the instant case.[6]

In *Caesar v. Kiser*, 387 F.Supp. 645 (M.D.N.C., filed January 13, 1975), Judge Ward found state action in the sale provisions of the North Carolina possessory lien statute, based upon two theories: (1) the delegation to private individuals of the traditional state function of lien enforcement, and (2) the transfer of title by state officials after a sale pursuant to the statute. *Id.* at 5–7 (slip opinion). We have discussed each of these theories at length in the previous Opinion in the instant case, 386

be pursued by way of appeal, rather than before the trial court, see *Blair v. Delta Airlines, Inc.*, 344 F.Supp. 367, 368 (S.D. Fla.1972). We agree with Professor Moore, however, that "[i]t would be an unreasonably narrow position to hold that a judgment may be modified and amended only up to the thin line where it amounts to a vacation of the judgment altogether", 6A Moore's Federal Practice ¶ 59.12[1]. Moreover, the Court of Appeals for the Third Circuit in *Sonnenblick-Goldman Corporation v. Nowalk, supra*, 420 F.2d at 859, has clearly held that a mo-

tion for vacation of a summary judgment based upon a request for rehearing and reconsideration by the trial court falls within the ambit of Rule 59(e).

6. Plaintiffs have also cited *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). The statutory procedure challenged in that case, however, involved process of garnishment issued by a state officer, and the Court accordingly did not have occasion to reach the state action issue.

F.Supp. at 1264–1266, and we adhere to the conclusions therein set forth.

In the second case cited by plaintiffs, *Howard v. For-Star Maintenance, Inc.*, No. 74 A 427 (D.Colo., December 19, 1974), the Court discusses the state action issue only in one brief reference to acts "under color of state law" by the defendants. Since the state action requirement of the Fourteenth Amendment is functionally equivalent to the requirement under 42 U.S.C. § 1983 that the challenged conduct be "under color of state law", *Gibbs v. Titelman, supra*, 502 F.2d at 1110, our analysis of the state action issue in the prior Opinion applies with equal force to action "under color of state law". Accordingly, we decline to follow the Court in *Howard v. For-Star Maintenance, Inc., supra*.

Further, we note that the Court of Appeals for the Seventh Circuit is in accord with the conclusions we reached in our initial decision. See *Phillips v. Money*, 503 F.2d 990 (7th Cir. 1974). In *Phillips*, the Court rejected the "delegation of state function" and "state encouragement" arguments with respect to the detention element of the Indiana repairmen's lien. *Id.*, 503 F.2d at 992–994.

The complaint in this action was filed on April 3, 1972. Because of the procedural complexity of the matter (see 386 F.Supp. at 1253–1254), in particular, the addition and deletion of parties, and the unsettled state of the law in this area, a definitive ruling did not take place until December of 1974. The definitive Opinion issued at that time, supplemented by the Opinion of January 10, 1975, extensively discussed the legal issues raised in these proceedings, and the ultimate reasons for our conclusion that summary judgment should be entered in favor of defendants, because of the absence of

state action, or acts under color of state law, in the over-all scheme, both statutorily, and as a matter of common law.

While plaintiffs have strenuously and capably argued their position in this request for reconsideration, the arguments they have presented, with one exception noted below, do not introduce anything that is new; rather their contentions are variations on the original themes we rejected then, and reject now. Accordingly, little would be gained by a detailed reiteration of the reasons for the conclusions already set forth in the two prior opinions. As we noted in the Supplemental Opinion and Order, 386 F. Supp. at 1269–1270, the legal questions in this case are substantial and complex, and the precise issue which was presented to us has not been decided by the Court of Appeals for the Third Circuit, although it is our belief that *Gibbs v. Titelman, supra,* is prescient of the ultimate decision by this Circuit in a case which involves the legal and factual matters that are presented by this action. Thus, the interest of all parties [7] are best served by termination of the proceedings in this Court, so that plaintiffs may seek appellate review of our decision, should they choose to do so.

One issue, however, has been raised by plaintiffs which was not before us at the time of the decision on the motion for partial summary adjudication. In essence, plaintiffs argue that, under certain circumstances, the Commonwealth of Pennsylvania permits collateral "enforcement" of the "repairmen's lien" through utilization of the criminal justice system; this possibility, it is said, further demonstrates the existence of state action in the challenged common law and statutory lien mechanism.

We will assume, *arguendo*, that situations may arise in which criminal pro-

---

7. Defendant North Penn Motors also has an interest in the speedy termination of the proceedings in this case, since the injunction in favor of plaintiff Lois Dillon has been continued pending appeal, even though defendants prevailed on the merits in this Court. See 386 F.Supp. 1269–1270.

ceedings are related to the assertion of a "repairmen's lien" against an unwilling automobile owner, and that such proceedings may collaterally aid in the enforcement of the lien by the repairman. For example, a prosecution for criminal trespass might be instituted by a repairman against a disgruntled vehicle owner who entered the repairman's property to regain forceful possession of his vehicle. See *Younger v. Plunkett*, 395 F.Supp. 702 (E.D.Pa.1975).[8] Indeed, in light of the bitterness which surrounds many disputes concerning automobile repair bills, it is not difficult to hypothesize prosecutions for assault and battery, disorderly conduct, or breach of the peace. Finally, we will assume, for this limited purpose, that the Commonwealth might seek to protect the repairman's lawful right to possession of a detained vehicle by criminal prosecution of persons who attempted to interfere with such possession.[9]

The possibility of criminal prosecution, however, does not thereby infuse the "repairmen's lien" with the requisite state action so as to bring the otherwise private acts of individuals within the proscription of the Fourteenth Amendment.

In support of their contention that judicial action in and of itself constitutes state action within the meaning of the Fourteenth Amendment, plaintiffs cite only *Barrows v. Jackson*, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953), and *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). In the years following these decisions, however, the Supreme Court and lower federal courts have declined to apply the state action doctrine announced in those decisions to judicial proceedings in general, whether civil or criminal, and have refused to impute to the state the actions of private litigants, which if undertaken by

8. *Younger v. Plunkett* was a towing lien case, in which the plaintiff had been convicted in state court on criminal trespass charges after entering the property of a towing company in an attempt, in Judge Higginbotham's apt phrase, "to use his own brand of self help repossession" to regain his automobile. The federal civil action was ultimately decided on non-constitutional grounds.

9. In this connection, plaintiffs have submitted the affidavit of one Richard Walker, in which he states that he has been criminally prosecuted on charges of theft by unlawful taking and theft of services for removing his automobile from the premises of a garage which asserted a "repairmen's lien" to cover the cost of repairs allegedly made to it. The former charge, which presumably refers to 18 C.P.S.A. § 3921, is said to be based upon the Commonwealth's recognition of the right to possession conferred on the repairman by the challenged lien, which may be enforced criminally, even as against the owner of the vehicle.

The indictment in this prosecution is not before us, and it is thus impossible to determine whether the Commonwealth is proceeding on the theory that the removal of the automobile itself was unlawful under the statute, or whether, for example, the unlawful taking refers to the brakes and other parts and materials belonging to the repairman which were installed in the vehicle. In the former case, we note that 18 C.P.S.A. § 3901 defines "property of another" as "property in which any person other than the actor has an interest which the actor is not privileged to infringe, regardless of the fact that the actor also has an interest in the property". With respect to the required *mens rea*, compare *Commonwealth v. Swan*, No. 7411–3241 (Municipal Ct. of Philadelphia, June 29, 1975).

We need not speculate, however, upon the propriety of a prosecution under § 3921 against one who removes his own property from the possession of a repairman who has asserted a lien against it. Plaintiffs do *not* seek to add Walker as a plaintiff in this action, nor to join the repairman as an additional defendant. They merely submit the affidavit as an indication that enforcement of the "repairmen's lien" by criminal prosecution, while admittedly rare, is more than an abstract possibility.

For the purposes of this case, we shall assume that the Commonwealth might seek to protect the repairman's lawful right to possession of a detained vehicle by criminal prosecution of persons who attempted to interfere with such possession. As discussed, *infra*, however, this assumption does not alter our prior conclusions with respect to the state action issue.

the state *in propria personna*, would contravene constitutional proscriptions, *merely because private individuals invoked the jurisdiction of the courts to enforce state laws which did not compel such actions.*

The limitation of the doctrine of *Shelley v. Kraemer*, is illustrated in the 1970 decision in *Evans v. Abney*, 396 U.S. 435, 90 S.Ct. 628, 24 L.Ed.2d 634 (1970), which involved a racially discriminatory clause in a testamentary trust that was authorized but not compelled by a state statute. In dissent, Mr. Justice Brennan argued in support of the broad theory of state action urged by plaintiffs in the instant case:

> In 1911, only six years after the enactment of §§ 69–504 and 69–505, Senator Bacon, a lawyer, wrote his will. When he wrote the provision creating Baconsfield as a public park open only to the white race, he was not merely expressing his own testamentary intent, but was taking advantage of the special power Georgia had conferred by §§ 69–504 and 69–505 on testators seeking to establish racially segregated public parks. As Mr. Justice White concluded in *Evans v. Newton*, " 'the State through its regulations has become involved to such a significant extent' in bringing about the discriminatory provision in Senator Bacon's trust that the racial restriction 'must be held to reflect . . . state policy and therefore to violate the Fourteenth Amendment.' " [*Evans v. Newton*] 382 U.S. [296] at 311, [86 S.Ct. (486), at 495, 15 L.Ed.2d (373) at 384]. This state-encouraged testamentary provision is the sole basis for the Georgia courts' holding that Baconsfield must revert to Senator Bacon's heirs. The Court's finding that it is not the State of Georgia but "a private party which is injecting the racially discriminatory motivation" inexcusably disregards the State's role in enacting the statute without which

Senator Bacon could not have written the discriminatory provisions.

> This, then, is not a case of private discrimination. It is rather discrimination in which the State of Georgia is "significantly involved," and enforcement of the reverter is therefore unconstitutional. * * *

396 U.S. at 458–459, 90 S.Ct. at 640 (dissenting opinion of Mr. Justice Brennan).

The majority of the Court, however, did not accept this broad theory of state action in the context of judicial proceedings. Writing for the Court, Mr. Justice Black stated:

> * * * In the case at bar there is not the slightest indication that any of the Georgia judges involved were motivated by racial animus or discriminatory intent of any sort in construing and enforcing Senator Bacon's will. Nor is there any indication that Senator Bacon in drawing up his will was persuaded or induced to include racial restrictions by the fact that such restrictions were permitted by the Georgia trust statutes. * * * On the contrary, the language of the Senator's will shows that the racial restrictions were solely the product of the testator's own full-blown social philosophy. * * *

*Id.*, 396 U.S. at 445, 90 S.Ct. at 633.

■■ In the context of civil proceedings, therefore, it appears that the state does not become significantly involved for the purposes of the Fourteenth Amendment, in litigation between private parties undertaken pursuant to state law, which permits, but does not compel, coerce, or induce private individuals to act in a manner which would be forbidden to the state under the constitution. Viewed in another way, the acts or motivations of private individuals *are not automatically imputed to the state, merely because the state allows such individuals access to its courts*, even when

court proceedings may directly, or collaterally, aid private persons in behavior which would be forbidden to the state in its own behalf.

The application of this principle in the criminal context is manifested in the "sit-in" cases which reached the Supreme Court in the middle of the last decade. Typically, these cases arose from prosecutions under state criminal trespass statutes, facially neutral in themselves, but which had the effect of enforcing city ordinances, or official pronouncements, *compelling* private acts of discrimination. In *Peterson v. City of Greenville,* 373 U.S. 244, 83 S.Ct. 1119, 10 L.Ed.2d 323 (1963), Mr. Chief Justice Warren, writing for eight members of the Court, stated:

> The evidence in this case establishes beyond a doubt that the Kress management's decision to exclude petitioners from the lunch counter was made because they were Negroes. It cannot be disputed that under our decisions "private conduct abridging individual rights does no violence to the Equal Protection Clause unless to some significant extent the State in any of its manifestations has been found to have become involved in it." *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L. Ed.2d 45 [50]; *Turner v. City of Memphis,* 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762.
>
> It cannot be denied that here the City of Greenville, an agency of the State, has provided by its ordinance that the decision as to whether a restaurant facility is to be operated on a desegrated basis is to be reserved to it. *When the State has commanded a particular result, it has saved to itself the power to determine that result and thereby "to a significant extent" has "become involved" in it, and, in fact, has removed that decision from the sphere of private choice.* It has thus effectively determined that a person owning, managing or controlling an

eating place is left with no choice of his own but must segregate his white and Negro patrons. The Kress management, in deciding to exclude Negroes, did precisely what the city law required.

> Consequently these convictions cannot stand, even assuming, as respondent contends, that the manager would have acted as he did independently of the existence of the ordinance. The State will not be heard to make this contention in support of the convictions. For *the convictions had the effect, which the State cannot deny, of enforcing the ordinance passed by the City of Greenville, the agency of the State. When a state agency passes a law compelling persons to discriminate against other persons because of race, and the State's criminal processes are employed in a way which enforces the discrimination mandated by that law, such a palpable violation of the Fourteenth Amendment cannot be saved by attempting to separate the mental urges of the discriminators.*

*Id.,* 373 U.S. 247–248, 83 S.Ct. 1121 (emphasis added). See also *Lombard v. Louisiana,* 373 U.S. 267, 83 S.Ct. 1122, 10 L.Ed.2d 338 (1963).

In applying the teaching of *Evans v. Abney* and the "sit-in" cases to the factual situation before us, we note the following considerations: (1) The Commonwealth has *permitted,* but has not in any way *compelled,* private individuals to utilize a lien mechanism which could not be employed directly by the state because of the proscription of the due process clause of the Fourteenth Amendment. (2) Having granted a lawful right of possession to the private repairman through the lien device, the state thereafter protects this right of possession, as it protects any lawfully acquired possession, through facially neutral criminal statutes. (3) There is no indication whatever that the officers and judges of the state criminal justice system are in any way motivated by a de-

sire to restrict the constitutional rights of persons against whom a "repairmen's lien" has been asserted.

■ Under these circumstances, we are unwilling to find the significant state involvement necessary to impute the private acts of these repairmen to the Commonwealth, even when the Commonwealth permits lienholders to collaterally assert their right to possession in the criminal courts pursuant to facially neutral criminal statutes. As Mr. Justice Harlan noted in his concurring opinion in *Peterson v. City of Greenville, supra,* 373 U.S. at 249, 83 S.Ct. at 1133:

> [j]udicial enforcement is of course state action, but this is not the end of the inquiry. The ultimate substantive question is whether there has been "State action of a particular character" (Civil Rights Cases, [109 U.S. 3, 11, 3 S.Ct. 18, 27 L.Ed. 835 (1883)])—whether the character of the State's involvement in an arbitrary discrimination is such that it should be held *responsible* for the discrimination.

To reach the contrary result in the instant case would suggest that whenever the state grants protection through its criminal processes to *any* lawfully acquired possession, that possession, albeit by a private individual, and the means by which it was acquired, are thereby converted into state action for the purposes of the Fourteenth Amendment. We are unwilling to reach such a result, which would have the effect of further eroding the distinction between state action and private action under the Constitution.

■ One final issue remains for discussion. Plaintiffs seek to join as an additional defendant Frank X. Garber, Director of the Bureau of Motor Vehi-

cles of the Pennsylvania Department of Transportation, who is responsible for transferring title to motor vehicles after sale pursuant to the provisions of 6 P.S. §§ 11–14.

We will deny leave to join Mr. Garber as a defendant in this action, for the following reasons:

(1) The addition of Mr. Garber as a defendant would not affect the outcome of this case with respect to the state action issue. In *Gibbs v. Titelman,* 502 F.2d at 1113, the Court of Appeals for the Third Circuit concluded that the issuance of certificates of title by William A. Titelman, Mr. Garber's predecessor in office, did not infuse private repossessions pursuant to provisions of the Uniform Commercial Code and the Pennsylvania Motor Vehicle Sales Finance Act with sufficient state action to justify invocation of the proscription of the Fourteenth Amendment. We reach a similar conclusion with respect to the issuance of certificates of title following sales to enforce the "repairmen's lien". Since the proposed post-judgment amendment would not remedy the defects of the original complaint, the joinder of Mr. Garber is futile, and may properly be denied by the trial court, *Stephens v. Reed,* 121 F.2d 696, 699–700 (3d Cir. 1941), see *Foman v. Davis, supra,* 371 U.S. at 182, 83 S.Ct. 227 (futility of amendment).

(2) The absence of Mr. Garber as a named defendant will not prevent plaintiffs from raising the certificate of title issue in the Court of Appeals, should they choose to do so.[10] Mr. Garber's affidavit is part of the record, and the Court may take judicial notice of 75 P.S. § 208, (change of ownership by operation of law and judicial sale), and the participation of state officers in the procedures therein established.

---

10. Plaintiffs concede that "[j]oinder is of course not necessary to establish state action through the acts of Garber". Plaintiffs' *Memorandum of Law in Support of* their Motion to Vacate or Alter or Amend Opinion and Final Order and Judgment, at p. 22.

(3) The joinder of Mr. Garber, and the concomitant necessity for service of process and responsive pleadings, would further delay these proceedings, to the prejudice of all parties.

For these reasons, the motions to vacate the judgment under Rule 59(e), and to allow amendment of the complaint to join Frank X. Garber as an additional defendant, will be denied.[11] Moreover, as noted *supra*, at n. 2, we shall also deny plaintiffs' motions filed pursuant to Rules 59(a), 59(c) and 52(b). For the purposes of appeal, the attached Order shall accordingly be considered as an Order denying motions under Rule 52(b) and 59 of the Federal Rules of Civil Procedure. See Rule 4(a), Federal Rules of Appellate Procedure.

An order will be entered accordingly.

---

11. It is unnecessary to decide whether plaintiffs' motion is properly brought under Rule 59(e) in conjunction with Rule 15(a), or under the former rule in conjunction with Rule

21. Under the circumstances of this case, the applicable standard is the same under either combination of rules.